[S. F. No. 3412.   Department One.—May 1, 1905.]

## J. J. C. LEONARD, Appellant, v. DUNCAN McPHERSON, and CHARLES W. WALDRON, Respondents.

LIBEL—SUFFICIENCY OF COMPLAINT—PUBLICATION OF PLAINTIFF'S LETTER —COMMENTS — AVERMENTS OF FALSITY. — A complaint for libel which alleges the publication by defendants of a letter, purporting to be written by the plaintiff and his partner, as proprietors of a hotel, to the wife of one of the defendants, charging her with boycotting the hotel, and threatening a boycott upon her business, and of newspaper comments upon the letter, and alleges that the whole article set forth, which included the letter, was published falsely and maliciously, and with the intent to expose plaintiff to obloquy, and to cause him to be shunned and avoided, and injured in his business, makes the sweeping statement that both the letter and the comments were false, and states a libel *per se*.

ID.—ERRONEOUS RULING UPON DEMURRER.—It was error to sustain a demurrer to such complaint on the ground that the publication included a letter written by the plaintiff himself, and that the pleader must select that portion of the publication upon which he bases his action.

APPEAL from a judgment of the Superior Court of Santa Cruz County. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Charles M. Cassin, and Lindsay & Netherton, for Appellant.

The complaint states a libel *per se*. (*Wilson* v. *Fitch*, 41 Cal. 363; *Lick* v. *Owen*, 47 Cal. 252; *Fitch* v. *De Young*, 66 Cal. 339.)

Joseph H. Skirm, for Respondents.

No special damages are alleged. A false charge of withholding patronage, which the law permits, is not libelous *per se*. (*Urban* v. *Helmick*, 15 Wash. 155; *Donaghue* v. *Gaffy*, 53 Conn. 43; *Homer* v. *Engelhardt*, 117 Mass. 539; *Hollenbeck* v. *Hall*, 103 Iowa, 214;[1] *Cole* v. *Neustadter*, 22 Or. 191; *Stone* v. *Cooper*, 2 Denio, 293; *Goldberger* v. *Phil. Grocer*

[1] 64 Am. St. Rep. 175.

Pub. Co., 42 Fed. 42; Stewart v. Minnesota Tribune Co., 40
Minn. 101;[1] McDermott v. Union Credit Co., 76 Minn. 84;
Shattuck v. Allen, 4 Gray, 540; Dooling v. Budget Pub. Co.,
144 Mass. 258;[2] Boynton v. Shaw Stocking Co., 146 Mass. 219;
Bennett v. Williamson, 4 Sandf. 60; Zenserling v. Journal
Co., 26 Misc. Rep. 591; 57 N. Y. Supp. 905; Smid v. Bernard,
13 Misc. Rep. 35; 63 N. Y. Supp. 278.)    The comments were
of matters of opinion based upon the letter, which were law-
ful.    (Hollenbeck v. Hall, 103 Iowa, 214;[3] Donaghue v. Gaffy,
53 Conn. 43; Burt v. Advertiser Newspaper Co., 154 Mass.
238.)    The complaint is ambiguous and uncertain; and that is
ground of special demurrer.    (Code Civ. Proc., sec. 430; Mc-
Farland v. Holcomb, 123 Cal. 84.)

VAN DYKE, J.—This is an action for libel.    The demurrer
of the defendants to the amended complaint of the plaintiff
was sustained by the court below, and the plaintiff declining
further to amend, judgment was rendered against him and in
favor of the defendants.    This appeal is prosecuted from said
judgment.

It is alleged in the amended complaint that the plaintiff is,
and for more than two years prior to the commencement of the
action had been, engaged in the hotel business in the city of
Santa Cruz, and was then, and for more than a year prior
thereto had been, the sole owner and proprietor of the Hotel
St. George, situated in said city, and as such owner and pro-
prietor of said hotel was then, and had been for the period
named, engaged in the hotel business, and catering to the pub-
lic as such, including both the residents of said city and county
of Santa Cruz, and others who arrived at said city from
abroad, in the matter of hotel accommodations and board and
lodging.

That the defendants were, and for more than five years
continuously had been, the exclusive proprietors and owners
of the newspaper named the "Santa Cruz Morning Sentinel,"
published in the said city of Santa Cruz, which has, and has
had, a large and extensive circulation in said city and county
and state.

That on the thirtieth day of March, 1902, the said defend-

[1] 12 Am. St. Rep. 696.          [3] 64 Am. St. Rep. 175.
[2] 59 Am. Rep. 83.

ants did falsely and maliciously, and with intention to expose
the plaintiff to hatred, contempt, ridicule, and obloquy, and
to cause him to be shunned and avoided, and to be injured in
his occupation and business, publish in said newspaper of and
concerning the plaintiff, the following article, to wit:—

"'FOR SHAME, FOR SHAME!

" 'Hotel St. George, Leonard & Walsh, Props.

" 'Santa Cruz, Cal., Nov. 8th, 1899.

" 'Mrs. C. W. Waldron, Dear Madam: It having been
brought to our attention that you will not patronize any one
stopping at the "St. George," thereby decreasing our receipts
between $2.50 and $3.00 per month, we have decided to retali-
ate in the following manner:

" '1st. We have notified our female help, which numbers
eight girls at present, to take their patronage from you, un-
der penalty of losing their positions.

" 'We have and do distribute among the business houses of
this city from $1,500 to $2,000 monthly, and we will notify
each and every one of them of your action, and notify them
that we will withdraw our patronage from any of them that
patronize you directly or indirectly during the term of your
boycott of our house.

" 'We have never lowered ourselves to do anything of this
kind previously, and hope never to have to do so again, and
will not do it without notifying the parties concerned, as we
do nothing underhanded, preferring all our actions to be open
and aboveboard.

" 'Very respectfully yours,

" 'LEONARD & WALSH.'

"In justice to Mr. Walsh, who is an intelligent gentleman,
we will say that he disclaimed at the time all connection with
the above threat. At that date J. J. C. Leonard was in active
management, Mr. Walsh merely acting in an advisory
capacity, although a partner in the hotel.

"Mr. and Mrs. Waldron were guests of the house when
Leonard and Walsh became the lessees. While they were at
the hotel during the Leonard and Walsh management their
bills amounted to about $700.00. Desiring to go to housekeep-
ing, as they had an American right to do, having become tired
of hotel life, which was their great American privilege, they

notified Mr. Leonard of their contemplated change on the eve of their leaving. This announcement aroused Mr. Leonard's anger to such a degree, at a second meeting, that he became insulting, apparently having been hurt at the idea of guests having the audacity to leave his inn without previously consulting him.

"The above letter, which is the very worst kind of a boycott, is self-explanatory. It can be seen at the 'Sentinel' office by any one interested. It proves beyond doubt what may be termed bulldozing tactics. It shows a desire to crush a woman engaged in business, although she had been a guest at his hotel and entitled to the most courteous treatment.

"Now for the facts to show that Mrs. Waldron was an innocent party and the folly of jumping too hastily at conclusions: Gus E. Dorn, representing a San Francisco millinery house, had his trunks delivered at the St. George. He learned later that a former customer of his was stopping at the Ocean House, then conducted by the Pixleys. In order to sell her goods he had his trunks taken to the Ocean House. Mrs. Waldron did not know that he had moved his trunks, nor did she care. It was Mr. Dorn's privilege to do what he pleased to accommodate or secure customers. As a matter of fact, Mrs. Waldron does not purchase, to any extent, of commercial travelers, preferring to make her selections at the wholesale houses in San Francisco.

"It was not on her account that Mr. Dorn decided to change from one hotel to the other, yet Mr. Leonard evidently jumped to the conclusion that it was.

"When Mr. Dorn heard of the letter he was greatly surprised and very indignant, knowing that Mrs. Waldron was an innocent party. He has never since visited Santa Cruz, although he used to come here often. Other commercial travelers for millinery houses also heard of the boycotting letter and became so indignant over it that some of them cut Santa Cruz out of their itinerary.

"What can fair-minded people think of such a letter as the above?

"At the time Mrs. Waldron was advised by several prominent business people here to begin legal proceedings, but she decided to merely keep the letter as a souvenir of the present incumbent of the St. George."

And it is averred in the said amended complaint that the said publication was and is false and defamatory; that by means of said false and defamatory publication, as above alleged, said defendants did falsely and maliciously expose the plaintiff to general and public hatred, contempt, ridicule, and obloquy, causing him to be avoided and shunned, and did injure him in his occupation and business, to his damage in the sum of ten thousand dollars, for which judgment is prayed. The demurrer is placed upon the ground that the said amended complaint does not state facts sufficient to constitute a cause of action, and is ambiguous, unintelligible, and uncertain, specifying wherein it is alleged to be so ambiguous, unintelligible, and uncertain. In the order of the court below sustaining the demurrer it is recited as a reason for sustaining the same, that a part of the publication consists of a letter written by the plaintiff himself, and that the pleader must select that portion of the publication upon which he bases his action.

The amended complaint, however, as will be seen, denounces the whole article, as published, as being false, and this sweeping allegation applies to the letter alleged to have been written by the plaintiff as well as to the comments upon it.

If the letter were fabricated, as must be assumed from the allegations of the complaint, then the article, taken as a whole, is libelous *per se,* inasmuch as it does not fall within the definition of a privileged publication. (Civ. Code, secs. 45, 47, 48; Code Civ. Proc., sec. 462.) The case of *Lick* v. *Owen,* 47 Cal. 252, is somewhat analogous to the one at bar. In that case the defendants, as editors and publishers of the San Jose Daily Mercury, published an article consisting of comments upon an alleged interview with Mr. Lick. In the interview Mr. Lick is alleged to have given, somewhat in detail, his early career, including wanderings in South America, and his arrival in California in pioneer days, and his various transactions and business in this state, where, by good luck rather than good management, he had accumulated a fortune. Subsequently, as stated in the article, defendants published a so-called apology, making some few corrections in the alleged interview. Instead of demurring, the defendants in that case answered, admitted the publication, but alleging that it was published as a mere pleasantry, and without malice. The

plaintiff submitted the case to the jury on the pleadings, and the only testimony for the defense was as to the exculpatory matter set up in the answer, denying that the publication was malicious. This being all the evidence, the court, of its own motion, charged the jury that the publication was libelous as tending to reflect shame upon the person of the plaintiff, and to hold him up to the people as an object of ridicule. In the opinion on the appeal in this court it is said: "We agree with the court below on this point. . . . If the publication be libelous and not privileged, the law implies that it was malicious. This is not a mere presumption which may be wholly overcome by proof, but it is a legal conclusion, which cannot be rebutted. But whilst the absence of actual malice cannot be shown as a bar to the action, the defendant may plead and prove 'any mitigating circumstances to reduce the amount of the damages.' " And, as is said in *Wilson* v. *Fitch,* 41 Cal. 363, "All libels are conclusively presumed to be in some degree, malicious." (See, also, *Fitch* v. *De Young,* 66 Cal. 339.)

The court below, under the circumstances, erred in sustaining the demurrer to the amended complaint. The judgment entered against the plaintiff must therefore be reversed and the cause remanded, with directions to overrule the demurrer.

It is so ordered.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.