[Civ. No. 7790. Second Appellate District, Division Two.—June 1, 1933.]

E. L. TAYLOR, Appellant, v. C. C. LEWIS, Respondent.

John C. Miles for Appellant.

Swaffield & Swaffield, Kenneth Sperry and Joseph E. Madden for Respondent.

ARCHBALD, J., *pro tem.*—On the day of trial of the action arising out of plaintiff's complaint for damages based on an alleged libel, defendant objected to the introduction of any evidence on behalf of plaintiff on the ground that the complaint failed to state facts sufficient to constitute a cause of action. The objection was sustained and plain-

tiff's motion for leave to amend was denied. From the judgment thereafter entered plaintiff has appealed.

To save expense the objection referred to was made prior to the impanelment of a jury, on stipulation of the parties.

The complaint alleges in effect that at the time of the publication of the alleged libelous article plaintiff was a duly elected and qualified member of the city council of Long Beach, and that defendant wilfully and maliciously caused to be published an article which exposed him to hatred, contempt and ridicule, which article is alleged to be false and unprivileged; that the same was published in the "Press Telegram", a newspaper of general circulation in Long Beach, the important parts thereof being hereinafter referred to.

No malice in fact in the publication appears on the face of the complaint, unless it is shown by the language used in the article. It is appellant's contention that the article is libelous *per se*.

Section 45 of the Civil Code defines libel, so far as material here, as "a false and unprivileged publication by writing, printing, . . . which exposes any person to hatred, contempt, ridicule or obloquy". It will be seen from such definition that the publication is not required to have been made "maliciously" to be a libel. All that is required is that it should be both *false and unprivileged,* and of such a character as to expose the subject thereof to contempt, etc.; and such seems to be the ruling of our courts so far as compensatory damages are concerned, without either pleading or proof of malice by the plaintiff. (*Davis* v. *Hearst,* 160 Cal. 143 [116 Pac. 530]; *Snively* v. *Record Publishing Co.,* 185 Cal. 565 [198 Pac. 1].) Necessarily if the recovery of punitive damages is sought, malice in fact must be both alleged and proved. (*Davis* v. *Hearst, supra;* sec. 3294, Civ. Code.) Only compensatory damages are asked in the complaint here.

Privileged publications, so far as material here, are defined by section 47(3) of the Civil Code to be those "made . . . in a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent". Such statutory definition seems to be but a restatement of that of the common law. The case

of *Harrison* v. *Bush,* 5 El. & Bl. (Q. B.) 344 [119 Eng. Rep. 509], laid down the rule in 1855 as follows: "A communication made *bona fide* upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contained criminating matter which, without the privilege, would be slanderous and actionable." Section 48 of the Civil Code provides in effect that in the case of the privilege provided for in section 47(3) thereof "malice is not inferred from the communication or publication".

With the foregoing principles of law in mind we turn to the complaint. It shows on its face that the article is a criticism of a public official, and we think it is a fair inference therefrom also that a recall proceeding was pending against such officer at the time. It further appears that the defendant was a former city councilman and was communicating information of interest to the readers of the paper who were interested in having able and qualified men in the city council; and we think the article shows that the defendant was so interested himself, and that he stood in such relation to such interested reading citizens as to afford a reasonable ground for supposing his motive in making the publication to be innocent. A fair criticism of public officials is within the privilege of section 47(3) of the Civil Code. (*Snively* v. *Record Publishing Co., supra; Jones* v. *Express Publishing Co.,* 87 Cal. App. 246 [262 Pac. 78].)

While ordinarily the question of privilege is a matter of defense, where the occasion of the communication is shown by the complaint to be privileged, as in this case, unless it also appears by an allegation of malice in fact that the privilege afforded by the occasion has been overstepped, in our opinion the pleading would fall short of stating a cause of action. Does the complaint herein allege such malice? In our opinion it does not. The allegation that the article was "maliciously published" would seem to be but a mere conclusion of the pleader, unless the article itself lends support to such conclusion. The malice necessary to defeat the privilege must be actual or express. (*Snively* v. *Record Publishing Co., supra,* p. 576.) In the case just cited the Supreme Court held that the jury would have been at liberty to infer actual malice in the publica-

tion from the cartoon itself, as it was libelous *per se*, had it not been for the fact that plaintiff ''waived all malice'', which the court held was equivalent to an admission that the publication was made without malice. Such decision also approves the rule that actual malice may be inferred from the publication of a defamatory charge that is ''false and libelous *per se*'' if the defendant publishes it without having probable cause for believing it to be true. The complaint here alleges that the ''charge as made'' in the article was false. ■ An objection to the introduction of any evidence on the ground stated here is in effect a general demurrer to the complaint, and of course all proper allegations of fact are admitted.

This brings us to a consideration of the nature of the article. The matters charged against plaintiff appear to be the opinions of defendant formed from association with plaintiff and the other councilman mentioned in the work of the city council. His opinion was that ''they did not consistently serve the best interest of the city''; that as members of the majority group ''they usurped the functions of the city manager, dictated appointments in violation of the charter, and forced out of office useful employees of the city''; that they ''had as little respect for sound business usage in their conduct of city affairs as they showed for the charter and the merit system in municipal service''; that they did not always ''take the highest and best bids when selling, and the lowest and best when buying''; that they ''lacked that conscientious regard for the city's interest which makes of public office a public trust''; that by reason of the presence of plaintiff and his associate on the council ''this city has suffered from a lack of confidence in'' it, and that business concerns ''have not felt that they could bid on municipal contracts and be sure of receiving impartial consideration'', and that ''they [business concerns] have felt that business with the city has not been on a strictly business basis''; that the ''condition'', in defendant's opinion, ''has hurt the good name of Long Beach and retarded its progress at a time when projects of major importance were to be carried forward''. The reasons for the article are thus set forth: ''The people elected me to office, and at this critical time I feel they are entitled to know the truth as I saw it. I have no personal feelings against Mr. Alexander

and Mr. Taylor. . . . I speak because it happens that I am in a position to know the conception of city office held by these councilmen, and because I consider the situation in municipal government for which they and their political associates are responsible to be a menacing one to Long Beach.'' Again, defendant says: ''The recall is the necessary instrument to remedy a bad situation and to preserve the reputation of the city.''

The article does show that respondent considered appellant unfitted for the office he held, but he had a right to express his opinion in that respect. (*Eva* v. *Smith,* 89 Cal. App. 324, 329 [264 Pac. 803].) It does not charge appellant with corruption or fraudulent practices in office, although it clearly does charge poor judgment. On the whole, the article seems to be a fair and temperate criticism of a public official, and does not charge anything that would follow appellant into his private life and stamp him as dishonest or bring upon him in the capacity of a private citizen the contempt of his fellows; and not being libelous *per se,* even though false, the privilege is not shown to be abused, on the face of the complaint.

Appellant urges that the court erred in denying his motion for leave to amend. Nothing appears in the record before us as to what showing, if any, was made as to the amendments proposed to be made. While great liberality should always be shown to the end that litigation may be terminated by a hearing on the merits, nevertheless the allowance of amendments during trial is in the discretion of the trial court, and its ruling will not be disturbed unless an abuse of discretion is clearly shown. (*Milliken* v. *Valencia,* 47 Cal. App. 16 [189 Pac. 1049].) Such abuse not being shown here, we cannot presume error.

Judgment affirmed.

Works, P. J., and Stephens, J., concurred.