[L. A. No. 15438.  In Bank.—December 23, 1935.]

FRED J. WILSON, Appellant, v. STOCKHOLDERS PUB-
LISHING COMPANY, INC. (a Corporation), et al.,
Respondents.

Lester E. Hardy and Victor A. Gillespie for Appellant.

Binford & Binford and L. B. Binford for Respondents.

THE COURT.—This action for alleged libel is founded upon the publication of three different articles in the Illustrated Daily News concerning the purchase by the county of Los Angeles of teletype machines for the new county hospital. In the first article, printed June 12, 1934, it was stated that the board of supervisors had purchased from the Sierra Equipment Company (the contract having been awarded to that company), of which plaintiff was president, 115 teletype machines for the sum of $75,000; that they were found to be impractical by hospital officials and placed in storage, where they had remained for about two years; that a radio speaker system had been installed for the comparatively small sum of $1900; that on April 4, 1934, Wilson had written a letter offering to repurchase the machines for $13,000, setting forth *in haec verba* a letter written by Sierra Equipment Company to the board of supervisors and signed by Wilson as vice-president, seeking a 60-day option on the machines for that sum; that the reason the teletype system was impractical was because it necessitated watching by somebody to get the messages, whereas, with the radio system employees might hear while attending to their regular duties; and that the supervisors refused Wilson's offer because they were planning to put the machines to work in other departments.

In the second article, under the heading, "County Pays $4357—5 Years Service on Junked Equipment", published July 31, 1934, it was said that the county had paid $4,357.93 for a five-year maintenance for the teletype machines which had been stored when found to be impractical, and "while the machines, unused, gathered dust and cobwebs, records showed"; that the fee was paid to Wilson and his Sierra Equipment Company, from which the machines were purchased; that it was made a part of the contract of purchase, although they were bought outright, that "his" company would maintain and service them; that they were tested, found to be impractical, and on April 7, 1930, after they had been

discarded, the supervisors adopted a resolution authorizing payment for this "maintenance" from October 1, 1929; and that on April 30, 1933, the county counsel notified the supervisors that the maintenance clause should be canceled, but that due to the contract provision that six months' notice of cancellation was necessary, "payments were continued until May 27, 1934". It was then added: "Just what 'maintenance', costing the county $4357.93, was given the machines while they were in storage is not a part of the county records."

On August 11, 1934, the third article was published, which set forth that one of the supervisors was studying methods of making use of the machines purchased at the cost of $75,000 who, after the facts had been published, had requested the director of the county board of efficiency for a report upon the use to which they might be put; that the director had recommended they be installed in the county forestry department and at the Olive View Sanitarium; that the newspaper desired to correct its published report that $4,357 had been paid by the county for the maintenance of the 115 machines; that the $4,357 had been paid to plaintiff and "his Sierra Equipment Corporation" for the maintenance of six machines which were used at the old hospital, the charge dating from October, 1929, to May, 1934; that no maintenance charge was ever made for the 115 unused machines; that the six machines were purchased from Wilson at the cost of $2,750, or $458.28 each, while the maintenance for the period amounted to $722.90 each, or $264.48 more than the machine originally cost.

We are not inclined to unduly lengthen this opinion by detailing the innuendo allegations or the denials of the truth of the things published with respect to the first or the third articles for reasons hereinafter set forth, but concerning the second it is averred:

"That the following statements and each of them contained in the aforesaid publication were published of and concerning the plaintiff and are and were false and untrue, to-wit:

"1. 'County Pays $4357—5 Year Service on Junked Equipment.'

"2. 'Los Angeles County paid $4357.93 for a five year "maintenance" of $75,000 worth of teletype machines purchased for use in the New General hospital, which were stored in the basement when found to be impractical, it was revealed

yesterday at the office of the County Auditor H. A. Payne.'

"3. 'The money was paid over a period of five years while the machines, unused, gathered dust and cobwebs, records showed.'

"4. 'The "maintenance" fee was paid to Frank J. Wilson and his Sierra Equipment Company from which the machines were purchased. It was made a part of the purchase contract that despite the fact that the machines were bought outright and became county property his company would "maintain and service" them.'

"5. 'On April 30, 1933, the county counsel notified the supervisors that the "maintenance" Clause of the contract should be canceled because the machines had never been used.'

"6. 'But the contract called for six months notice to Wilson and the Sierra Company before cancellation and so payment continued until May 27, 1934.'

"7. 'Just what "maintenance" costing the county $4357.93 was given the machines while they were in storage is not a part of county records.'

"That the aforesaid publications and the portions of the publications above specified are and were malicious, defamatory, false and untrue, in that:

"1. Fred J. Wilson was not the owner of the Sierra Equipment Company.

"2. That the county did not pay $4357.93 for five years service on 'junked equipment'.

"3. That Los Angeles County did not pay $4357.93 for a five year maintenance of $75,000 worth of teletype machines while the machines, unused, gathered dust and cobwebs in the basement.

"4. That the records do show what this payment was for.

"5. That the maintenance fee was not paid to Fred J. Wilson or to the Sierra Equipment Company for services on these machines, or that the Sierra Equipment Company was his company or that the said machines were purchased from this company, or that it was made a part of the purchase contract that 'despite the fact that the machines were bought outright and became county property his company would maintain and service them'.

"6. 'On April 30, 1933, the county counsel notified the supervisors that the "maintenance" clause of the contract

should be cancelled because the machines had never been used.'

"7. There never was at any time a contract which called for six months notice to Wilson and the Sierra Equipment Corporation before cancellation of maintenance or service on these machines or that payment continued until May 27, 1934."

It is also alleged:

"That defendants, Stockholders Publishing Company and E. M. Boddy by the aforesaid publications and the aforesaid portions of the publications above specified meant to say and were understood by those who read said publications to mean and to impute:

"1. That plaintiff was the owner of the Sierra Equipment Corporation.

"2. That plaintiff was charging the County a 'maintenance' fee on equipment that was never used.

"3. That the plaintiff was dishonest and lacking in integrity in his dealings with the County of Los Angeles in that he was charging the County $4357.93 as a 'maintenance' fee on 'junked equipment' not in use, and therefore for which there should be no necessity for 'maintenance'.

"4. That through some chicanery or juggling of accounts or through some other illegal or dishonest method the plaintiff had caused the money to be paid to him by the County of Los Angeles without a record being kept thereof."

A general demurrer to the first amended complaint was sustained, and the plaintiff declining to amend, a judgment of dismissal was entered, from which this appeal is prosecuted.

The questions involved are whether the denials of the truth of the publications are sufficient and whether the matters printed are susceptible to the interpretation put upon them by the innuendo allegations, assuming, of course, that the articles were not libelous *per se*.

It is our view of the case that we need not be concerned with the minute details of the denials or the innuendo relating to either the first or the last publication, because we find nothing in either which exposed the appellant "to hatred, contempt, ridicule, or obloquy", or which caused him "to be shunned or avoided", or which had a tendency to "injure him in his occupation". A reading of the first article very clearly demonstrates that it was intended to and did charge

the board of supervisors with poorly advised action in purchasing equipment without due consideration of its practicability for the use intended. It goes to the length of stating the exact manner in which the machines were determined to be impractical. There is no suggestion of dishonesty or unfair dealing on the part of appellant or the company which he represented. While by way of innuendo it is charged that the publication intended to convey the thought that plaintiff was dishonest and had sold the county useless and valueless equipment, we do not believe that it is subject to such an interpretation. It was not stated to be valueless or useless, but impractical only for the particular purpose, and for the reasons stated. Nor do we see any impropriety in the letter seeking an option to repurchase the machines at a reduced price after it had been determined they were impractical, or at least not as practicable as the loud-speaker system. An offer to repurchase would be of no different category. It is a matter of common knowledge that such equipment is not of every-day use, for which reason appellant and the concern with which he was connected might have great difficulty in disposing of them at all. It seems manifest that the whole tenor and purpose of the article was to castigate the board of supervisors for purchasing such equipment without giving due consideration to the possibility of its use in a hospital.

For similar reasons we think the third article and its detailed allegations do not warrant special consideration. It is not suggested in the complaint that $4,357 was not paid for the maintenance of the six machines at the old hospital, nor denied that such maintenance charge exceeded the original cost in the amount of $264.48 per machine. Nor is it alleged that the county was not making use of the machines as published. And appellant is not otherwise connected with the article except as having sold through the Sierra Equipment Company the 115 machines as stated in the first publication. Hence there is nothing in the third story to reflect upon appellant's character or injure him in his occupation.

However, the second article must be held to differ from the other two. It, in effect, charges that appellant exacted from the county $4,357.93 for services performed in maintaining the machines—when no services could have been rendered because they were not being used. Without any

qualification, such a charge would be one of unconscionable conduct and tend to injure appellant in his business. The statement that the contract provided for such maintenance although the machines were bought outright does not, we think, save it from the reasonable interpretation put upon it by plaintiff when, by way of innuendo, he says it was intended by the article to convey the thought: "That the plaintiff was dishonest and lacking in integrity in his dealings with the County of Los Angeles in that he was charging the county $4357.93 as a 'maintenance' fee on 'junked equipment' not in use, and therefore for which there should be no necessity for 'maintenance'."

We have heretofore set forth the allegations by which the truth of the statements in the article are denied. They are in the words of the publication, and sufficiently put in issue the falsity of the principal portions thereof, including the charge that the sum of $4,357 was collected for servicing machines which were not in use. (*Haskins* v. *Jordan,* 123 Cal. 157 [55 Pac. 786]; *Leonard* v. *McPherson,* 146 Cal. 616 [80 Pac. 1084].) The respondents place great reliance upon the case of *Mortensen* v. *Los Angeles Examiner,* 112 Cal. App. 194 [296 Pac. 927], to sustain this contention that the falsity of the published statement is insufficiently alleged, but an examination of that case indicates that by artful pleading in that cause, no damaging statement was actually denied, although at first glance it might appear otherwise. Here the complaint denounces as untrue practically the entire article and as against a general demurrer must be held to be sufficient.

Judgment reversed.