[Civ. No. 16956. Second Dist., Div. Three. Jan. 16, 1950.]

AUSTIN F. HOWARD, Appellant, v. SOUTHERN CALIFORNIA ASSOCIATED NEWSPAPERS (a Corporation) et al., Respondents.

Paul S. Crouch for Appellant.

O'Melveny & Myers, Jackson W. Chance, Deane F. Johnson, Aubrey N. Irwin and Henry Melby for Respondents.

SHINN, P. J.—On July 16, 1948, an election was pending in the city of Glendale for the removal from office of certain city officials. Plaintiff Howard was chairman of the committee sponsoring the recall. Glendale News-Press, a newspaper published in Glendale by Southern California Associated Newspapers, was opposed to the recall. Its columns were open for the expression of the views of the contending factions. Donald E. Close, a minor, the son of W. E. Close, allegedly acting in concert with his father, expressed certain views concerning the recall movement in a letter which was published by the newspaper.[1][2][3] Plaintiff thereupon sued the newspaper, Don-

---

[1]It reads as follows: "CHARGES LACKING  Editor, News Press: After reading the most insufficient yet entire statement of Austin F. Howard which appeared recently, it has occurred to me that the recall movement in Glendale is not only a blot on our clean and spotless civic record, but is also childish in aspect. I refer specifically to the following words of Chairman Hoard: 'The Chief argument against the recall is that no charges of a criminal act have been made. We would not attempt to dishonor any name without legal proof of criminal acts.' As I pointed out before shortly after the beginning of the recall, definite proof was lacking. After coming away from that first meeting, it was evident that, while Mr. Howard had succeeded in painting a very black picture of civic affairs, he had failed to make any pointed charges, ascribe any definite proof to his statement, or connect any of those so-called 'deplorable' conditions to our very efficient City Council. Now in his

ald E. Close and W. E. Close for libel, alleging that the statements were false and were published with actual malice. The three quoted writings were attached to the complaint as exhibits. The original complaint contained no allegation of special damage suffered by plaintiff. Demurrers of defendants were sustained with leave to amend. An amended complaint was filed which also failed to allege special damage. Demurrers to the amended complaint were sustained without leave to amend and although a single judgment would have

own words he has admitted that proof is lacking—in fact he has stated that no charges exist. While for some unknown reason the state laws provide that a recall election may be held even in view of the fact that charges are missing (which was generally emphasized by recall officials at their meeting), it stands to reason that so in a trial both evidence and proof must be present before a conviction can be made. This applies as much if not more so to a municipal recall where not only the city's name but the names of prominent municipal officials are at stake. The general 'charge' that taxation without representation exists is absolutely ridiculous as any alert citizen has already perceived. By installation of the parking meters the city has not imposed a tax in the ordinary sense of the word, but rather has attempted to solve the downtown traffic problem. It has been pointed out that the meters were only a trial to test their efficiency, but even so they have received the support of many civic organizations. I say again, 'The meters will not cost the city a cent.' Directly they have proved themselves a benefit because already the city has felt able to use the money so earned for constructing off-street parking facilities. No asset has ever been considered a financial burden. As long as the city shows such assets which have been brought about by the meters, no one could say that the meters are a cost. The entire arrangement for their installation was ideal—any business concern would readily wish for such a contract as was given to the city. In the light of what has already been said in opposition to the recall and what I have added above, it cannot be denied that the recall movement is entirely illegitimate, a mala fide attempt to discredit noble and honorable officials who have served our city long and well. This sinister movement must not be permitted to continue to malign the democratic foundations of our city government. Mr. Howard and his entire recall committee have proved themselves a disgrace to Glendale, and it should be the desire of every citizen to destroy this dangerous and unjust element by casting his vote against the recall.— DONALD E. CLOSE.''

[2]On July 20, 1948 Howard presented to the newspaper a communication reading as follows: ''Demand is hereby made that you retract certain statement which was published in your paper July 16, 1948, on Page 4-A under an article entitled Letters to the News-Press, and purportedly signed Donald E. Close. Particular reference is made to the last paragraph of said article which reads as follows: 'In the light of what has already been said in opposition to the recall and what I have added above, it cannot be denied that the recall movement is entirely illegitimate, a mala fide attempt to discredit noble and honorable officials who have served our city long and well. This sinister movement must not be permitted to continue to malign the democratic foundations of our city government. Mr. Howard and his entire recall committee have proved themselves a disgrace to Glendale, and it should be the desire of every citizen to destroy this dangerous and unjust element

sufficed, separate judgments of dismissal were entered in favor of the defendants. Plaintiff appeals.

Since the case arises on demurrer, we shall assume the sufficiency of the complaint to allege that the statements published by defendants were both false and unprivileged. Although plaintiff's demand for a retraction related only to the last two sentences of the article the complaint alleged the falsity of the entire publication. We shall discuss, chiefly, the statements embraced within the demand. As to the remainder of the article we shall say, only, that it clearly was not defamatory. It is therefore unnecessary to pass upon the contention of the defendants that a claim of libel in such a case is limited to the statements specified in the demand for retraction.

*by casting his vote against the recall.*—DONALD E. CLOSE.' You are notified that Mr. Austin F. Howard considers the statements libelous in nature. Demand is further made that you publish this retraction so that it comes within the Provisions of Section 48a Civil Code, and your particular attention is called to the following Provision of said Code. 'If a retraction or correction thereof be not published in as conspicuous a place and type in said newspaper as were the statements complained of, in a regular issue thereof published within two weeks after such service, plaintiff may allege such notice, demand, and failure to retract in his complaint and may recover both actual, special and exemplary damages if his cause of action be maintained.' ''

[3]On July 30, 1948, the Glendale News Press published the following retraction: ''A STATEMENT On July 16, 1948, in the 'Letters' column, the News-Press published a letter from Donald E. Close addressed to the editor of the News-Press and referring to the pending recall election. Austin F. Howard and his attorney have advised the News-Press that they regard statements contained in the last paragraph of the letter as libelous in nature. We disagree that such is the case and further state that we did not intend to publish any statement accusing Mr. Howard or the Recall Committee of having improper motives or acting illegally. The News-Press viewed Mr. Close's letter as being only an expression of opinion in connection with the recall election and printed such pursuant to its policy of publishing statements from both sides on this important matter. In our view this letter from Mr. Close represents part of the give and take present in every political campaign and should not be construed as accusing anyone of unlawful or reprehensible motives or actions. As readers of this paper know, the News-Press has an honest difference of opinion with Mr. Howard and the Recall Committee on the recall election, but in fairness to the public we have published statements and letters from Mr. Howard and others who favor the recall, that cannot be said to be complimentary to the News-Press. We do not believe and have not intended to assert that Mr. Howard or the Recall Committee represent a sinister movement or that they are a disgrace to Glendale. We only disagree with their position on the recall election and believe that the public's interest will be served best by a majority vote against the recall. Any other interpretation of our printing Mr. Close's letter is erroneous and is hereby corrected. We shall continue to print the views of all parties and believe that by so doing the voters of Glendale will be aided in casting their ballot in the recall election.''

"Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof." (Civ. Code, § 45a.) Special damages are "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other." (Civ. Code, § 48a, subd. 4(b).) If the person claiming to have been libeled, within 20 days after knowledge of the publication, demands a retraction specifying the statements claimed to be libelous and if the publisher fails for three weeks after the demand to publish a correction in substantially as conspicuous a manner as the allegedly libelous statement, recovery may be had of general, special, and, in proper cases, exemplary damages. Unless demand is made and no proper retraction is published the plaintiff can recover only special damages. (Civ. Code, § 48a (1).)

Since the complaint seeks only general damages, the questions are presented whether the publication was libelous on its face and, if so, whether the retraction was sufficient.

The questioned article must be examined with certain general principles in mind. ■ Whether a publication is libelous *per se* is a question of law. (*Peabody* v. *Barham*, 52 Cal. App.2d 581, 584 [126 P.2d 668].)

■ In determining whether or not it is libelous, the article must be read as a whole in order to understand its import and the effects which it was calculated to have upon the minds of those who read it. (*Blake* v. *Hearst Publications Incorporated*, 75 Cal.App.2d 6, 11 [170 P.2d 100].)

If it can reasonably be given an innocent and harmless interpretation and meaning it is not libelous *per se*. (*Washer* v. *Bank of America*, 21 Cal.2d 822, 828 [136 P.2d 297, 155 A.L.R. 1338] ; *Babcock* v. *McClatchy Newspapers*, 82 Cal.App. 2d 528, 538-539 [186 P.2d 737].)

■ Publications by which it is sought to convey pertinent information to the public in matters of public interest are permitted wide latitude. In controversies of a political nature, in particular, the circumstances often relieve statements, which might otherwise be actionable, of possible defamatory imputations. Mere expressions of opinion or severe criticism are not libelous if they clearly go only to the merits or demerits of a condition, cause or controversy which is under public scrutiny, even though they may adversely reflect upon the

public activities or fitness for office of individuals who are intimately connected with the principal object of the attack. (*Babcock* v. *McClatchy Newspapers, supra; Eva* v. *Smith,* 89 Cal.App. 324 [264 P. 803] ; *Taylor* v. *Lewis,* 132 Cal.App. 381 [22 P.2d 569] ; *Harris* v. *Curtis Publishing Co.,* 49 Cal. App.2d 340 [121 P. 761] ; *Wilson* v. *Stockholders Pub. Co., Inc.,* 4 Cal.2d 724 [52 P.2d 913].)

These familiar rules have direct application to elections for the recall of public officials.  (See *Maher* v. *Devlin,* 203 Cal. 270 [263 P. 812], recall of mayor and city council; *Taylor* v. *Lewis, supra,* recall of city councilman.)

▮      The statements of the portion of the article protested by plaintiff were prefaced by a reference to the parking meter issue and to the asserted fact that the sponsors of the recall had made no specific charges or accusations against the officials.  It was asserted that no ''pointed'' charges of misconduct had been made against the councilmen, no proof offered to connect them with the ''deplorable'' conditions which plaintiff claimed to exist, and that plaintiff had conceded as much. The concluding paragraph, which assumed the truth of the preceding statements, appears to be only an expression of the opinions and views of the author respecting the merits of the recall movement.  It was devoid of statements of fact.  It denounced the recall movement, calling it ''illegitimate,'' ''a mala fide attempt'' to discredit the officials, a ''sinister movement,'' and it referred to the recall committee as a ''disgrace to Glendale,'' and as a ''dangerous and unjust element'' that must be destroyed by defeating the recall.  Considered with the preface, as the author said it should be, the final paragraph merely enlarged upon the idea that no sufficient cause was being advanced for the recall of the councilmen.  The justness and good faith of the recall were questioned without any words casting doubt upon the character of the members of the recall committee or the integrity of their actions apart from their active support of the recall.

In the words of the court in *Taylor* v. *Lewis,* 132 Cal.App. 381, 386 [22 P.2d 569], the article . . . ''does not charge anything that would follow appellant into his private life and stamp him as dishonest or bring upon him in the capacity of a private citizen the contempt of his fellows,'' etc.  This, we take to be a proper test on a charge of libel of words spoken or written concerning those who are participating on one side or the other of a political issue.

It is a common practice for newspapers to publish communications from their readers dealing with matters of news or public interest. Expressions of views which are addressed to the merits or demerits of the issue are not actionable if they appear as opinions only and not as direct or covert statements of fact which are detrimental to the character of the individuals upon whom they may reflect. We conclude that the article in question was not libelous *per se*.

Although it is unnecessary to carry this opinion further, we may add that the retraction published by the newspaper, as quoted, appears to us to be as full and fair as plaintiff had a right to expect. We do not see how anyone who read the communication from Mr. Close, and also the retraction, could have failed to regard the latter as an adequate and forthright withdrawal of any implied charges against the good character and motives of plaintiff.

Plaintiff insists it was an abuse of discretion to refuse him another opportunity to amend. We think not. The weakness of his complaint lay in his failure to allege special damage. He had one opportunity to add that allegation and failed to do so. His argument upon this point is silent as to any respect in which he could have amended to state a cause of action.

The judgments are affirmed.

Wood, J., and Vallée, J., concurred.