[Civ. No. 46084. Second Dist., Div. Five. Oct. 23, 1975.]

MONTY G. MASON II et al., Plaintiffs and Appellants, v.
WESTERN UNION TELEGRAPH COMPANY, Defendant and
Respondent.

[Civ. No. 46085. Second Dist., Div. Five. Oct. 23, 1975.]

VICTORIA TOPPING et al., Cross-complainants and Appellants, v.
WESTERN UNION TELEGRAPH COMPANY, Cross-defendant and
Respondent.

**COUNSEL**

Monty G. Mason II, in pro per., for Plaintiffs and Appellants and for Cross-complainants and Appellants.

Lawler, Felix & Hall, Kenneth B. Wright and Erwin E. Adler for Defendant and Respondent and for Cross-defendant and Respondent.

---

**OPINION**

**LORING, J.**\*—These two cases are the by-product of an apparently bitter acrimonious dissolution of marriage proceeding between Maurice V. Kelly (Maurice) and Michele Kelly (Michele) in which Western Union Telegraph Company, a corporation (Western Union), as the transmitter of telegrams from Maurice to Michele and her attorney, Monty G. Mason and others, was sued for damages for alleged libelous statements contained in the telegrams. The complaints also attempted to state causes of action for intentional infliction of emotional distress and invasion of the right of privacy.

In Appeal No. 46084 the plaintiffs were Monty G. Mason II, Robert T. Smith, a member of the Los Angeles Police Department, and the defendants were Maurice and Western Union.

Appeal No. 46085 arises out of a cross-complaint by Victoria Topping and Michele as cross-complainants and Western Union and Maurice as cross-defendants.

In each case the trial court sustained the demurrer of Western Union without leave to amend on the ground that the complaint and cross-complaint respectively did not state facts sufficient to state a cause of action against Western Union. In each case Maurice was required to answer on the libel and other causes of action. Mason, Smith, Topping and Michele appeal from judgments dismissing their respective actions against Western Union. Each case involves the identical legal question of the liability (libel, intentional infliction of emotional distress and invasion of privacy) of a public utility for transmitting telegrams from the sender to the addressee containing allegedly libelous statements. It is not claimed that Western Union acted other than as the transmitter of the messages.

In 1972 the marriage of Michele and Maurice went awry. The two were separated and proceedings for dissolution of the marriage were initiated. During the period from 1972 to 1974 Maurice wrote and sent to

---

\*Assigned by the Chairman of the Judicial Council.

various persons a prodigious series of telegrams containing statements relating to the moral, physical or psychiatric condition and behavior of Michele, her friend Topping, her lawyer Mason and the other plaintiffs and cross-complainants. If the telegrams had been motion pictures they probably would have received an X rating. The telegrams also contained threats against Michele, her lawyer Mason and others. For the purpose of this appeal only we will assume (without deciding) that the telegrams contained libelous statements. It will therefore not be necessary to refer to the contents of the telegrams.

## DISCUSSION

In *Routh* v. *Quinn,* 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215], the Supreme Court held that a demurrer without leave to amend is properly granted when the complaint cannot be amended to state a cause of action.

This principle is supported in *Vater* v. *County of Glenn,* 49 Cal.2d 815, 821 [323 P.2d 85], and *Sackett* v. *Wyatt,* 32 Cal.App.3d 592, 603 [108 Cal.Rptr. 219].

We therefore turn to consider the current state of substantive law as to the liability of a telegraph company for transmitting allegedly libelous messages.

Mason/Smith and Michele/Topping all urge the court to consider various state statutes and Public Utilities Commission rules, none of which are controlling, but all of which can be interpreted, they state, to coincide with two cases.

The first is *Waters* v. *Pacific Telephone Co.,* 12 Cal.3d 1 [114 Cal.Rptr. 753, 523 P.2d 1161]. In *Waters* the court held that a superior court does not have jurisdiction in a matter controlled by the Public Utilities Commission. The case has areas of similarity with the instant case, but deals in no way with the central issue, to wit liability for libel of a public utility engaged in the business of transmitting telegraphic messages.

The second case is *Gray* v. *Western Union Tel. Co.,* 87 Ga. 350 [13 S.E. 562]. This 1891 case concerned Western Union's liability for sending information concerning the sale of commodities (at that time regarded as a form of gambling) over their wires. The case again reveals points of similarity with the case at bar, however there is other more recent and closely connected authority which we find more persuasive.

Western Union contends that it has neither a right nor a duty to censor telegrams transmitted by it. It bases its contention on statutory and case authority which it claims expresses public policy.

Civil Code section 2207 reads: ·

"A carrier of messages by telegraph must, if it is practicable, transmit every such message immediately upon its receipt. But if this is not practicable, and several messages accumulate upon his hands, he must transmit them in the following order:

"1. Messages from public agents of the United States or of this state, on public business;

"2. Messages intended in good faith for immediate publication in newspapers, and not for any secret use;

"3. Messages giving information relating to the sickness or death of any person;

"4. Other messages in the order in which they were received."

It is followed by Civil Code section 2209:

"Every person whose message is refused or postponed, contrary to the provisions of this chapter, is entitled to recover from the carrier his actual damages, and fifty dollars in addition thereto."

The Public Utilities Code further provides that:

"No public utility shall, as to rates, charges, service, facilities, or in any other respect, make or grant any preference or advantage to any corporation or person or subject any corporation or person to any prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service. The commission may determine any question of fact arising under this section." (§ 453.)

Section 7904 provides:

"Every agent, operator, or employee of any telegraph or telephone office, who wilfully refuses or neglects to send any message received at

such office for transmission, or wilfully postpones the transmission of the message out of its order, or wilfully refuses or neglects to deliver any message received by telegraph or telephone, is guilty of a misdemeanor. Nothing in this section shall be construed to require any message to be received, transmitted, or delivered, unless the charges thereon have been paid or tendered, nor to require the sending, receiving, or delivery of any message counseling, aiding, abetting, or encouraging treason against the Government of the United States or of this State, or other resistance to the lawful authority, or any message calculated to further any fraudulent plan or purpose, or to instigate or encourage the perpetration of any unlawful act, or to facilitate the escape of any criminal or person accused of crime."

The pertinent statutes therefore provide that Western Union had a duty to send each telegram submitted to it as soon as it possibly could, unless the telegram fell under one of the clauses of Public Utilities Code section 7904 which exceptions are not here relevant.

There does not appear to be any California case directly on point. The closest cases deal with a telephone company's right to limit or discontinue service in the event that telephone facilities are used for an illegal purpose.

In *People* v. *Brophy,* 49 Cal.App.2d 15 [120 P.2d 946], the court dealt with the telephone company's right to discontinue service on the basis that the information transmitted over its lines was used for gambling purposes. In denying such right the court stated (p. 33):

"Public utilities and common carriers are not the censors of public or private morals, nor are they authorized or required to investigate or regulate the public or private conduct of those who seek service at their hands."

*Sokol* v. *Public Utilities Commission,* 65 Cal.2d 247 [53 Cal.Rptr. 673, 418 P.2d 265], also upheld a subscriber's right to continued phone service, in spite of police allegations that the phone in question was being used for unlawful purposes. The court cited the overpowering policy issues in saying at pages 254-256: "In modern commercial society, telephone communication is indispensable to legitimate business operations, and the discontinuance of service for even a limited period of time is capable of causing a company to fail; the instant case is a prime illustration. . . . Hence, this restraint upon communication by the

subscriber also affects his right of free speech as guaranteed by the First Amendment of the federal Constitution. 'Inasmuch as the rights of free speech and press are worthless without an effective means of expression, the guarantee extends both to the content of the communication and the means employed for its dissemination.' (*Weaver* v. *Jordan* (1966) 64 Cal.2d 235, 241-242 [49 Cal.Rptr. 537, 411 P.2d 289].)"

In *Huntley* v. *Public Util. Com.,* 69 Cal.2d 67 [69 Cal.Rptr. 605, 442 P.2d 685], the Supreme Court uses language concerning first amendment freedom of speech. This case held that Pacific Telephone could not require all offers of recorded phone messages to supply their names and addresses where they could be reached. The court was again concerned with censorship. It said at page 72: "Improper restraints on communication may vary in form and degree, but all have the effect of restricting the dissemination of ideas. The clearest abuse is an outright prohibition of a constitutionally protected form of speech. [Citations omitted.] Regulation short of absolute prohibition is also invalid when expression is made dependent on state approval by the obtaining of a permit [citation omitted] or is conditioned upon obtaining the approval of a board of censors [citation omitted]. Nor does the restriction become permissible because it merely limits the manner of expression rather than the initial right to communicate."

This judicial abhorrence of censorship by those public utilities who supply communication service is not exclusive to California. (See also, *Anderson* v. *New York Telephone Company,* 42 App.Div.2d 151 [345 N.Y.S.2d 740]; *Flynn* v. *Reinke,* 199 Wis. 124 [225 N.W. 742].)

The Restatement of the Law of Torts section 612 reads: "A public utility whose duty it is to transmit messages for the public is privileged to transmit a message although it is obviously defamatory, unless the agents who transmit it know or have reason to know that the sender is not privileged to send it."

Federal law provides some guidance on this issue.

*Von Meysenberg* v. *Western Union Telegraph Co.,* 54 F.Supp. 100, provides at page 101: "The immunity of a telegraph company from liability to a defamed person when it transmits a libelous message must be broad enough to enable the company to render its public service efficiently and with dispatch. Speed is the essence of such service. Telegraph companies are required by law to accept and promptly

transmit lawful messages tendered to them, with substantial penalties for failure to promptly and impartially perform that service. (Federal Communications Act of 1934, 47 U.S.C.A. § 201 et seq.) If such companies are to handle, with expedition and dispatch, the great volume of business entrusted to them, it is obvious that their agents can not spend much time pondering the contents of messages with a view to determining whether or not they are defamatory, and if so, whether or not the sender might be privileged. To exhaustively inquire into such matters would require the services of experts, and sometimes endless investigation. The conclusions reached would often be clouded by doubt. Manifestly, therefore, a telegraph company's privilege can not be restricted to cases in which the sender was in fact privileged, as often he may be. It must be broader than that. The modern rule is that in order to justify a recovery the party libeled must produce evidence of actual or express malice, bad faith, or knowledge of lack of privilege on the part of the telegraph company, that is, that the sender was acting, not in the protection of a legitimate or privileged interest, but in bad faith for the purpose of traducing another. Here, there was no actual malice, and nothing to put the telegraph company on notice that the statements contained in the message were not true, or that as between sender and addressee, it was not a privileged communication." (See also *Western Union Tel. Co.* v. *Lesesne,* 198 F.2d 154, cert. den., 344 U.S. 896 [97 L.Ed. 693, 73 S.Ct. 276] [182 F.2d 135].)

In our view federal cases are at best only persuasive since at least initially the question of whether or not a cause of action exists (arising out of the intra-state transmission of messages) is in the first instance a question of local law. California policy, case law and statute, all point to a vital need not to: (1) burden those who supply telegraph service with the duty to investigate messages prior to transmission, or (2) endow a private corporation (even though a public utility) with the power to monitor and obstruct the right of all persons to freely communicate.

■ We conclude that under California law plaintiffs and cross-complainants did not state a cause of action against Western Union for at least one basic reason: even if a publication were made by Western Union (a point which we do not decide[1]) it was privileged as a matter of law.

Even if we were to hold that the transmission of a telegram by Western Union constituted a publication by Western Union (which we do not

[1]See 50 American Jurisprudence 2d, Libel and Slander, section 167, page 668.

decide), such publication would be privileged under Civil Code section 47, subdivision 3, which reads:

"A privileged publication or broadcast is one made—

". . . . . . . . . . . . . . . . . . .

"3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information."

Insofar as Western Union is concerned it had a right to presume (in the absence of actual knowledge to the contrary, such as notice from the addressee) that the addressee of telegrams submitted to it for transmission is a person "interested therein" and that the sender of such communication is "one who is also interested" therein. In the normal course of its business Western Union therefore had a right to presume that the sender and addressee of telegrams are each persons "interested therein" and that in transmitting such telegrams, as directed, it engaged in a privileged act under Civil Code section 47.

The complaint did not allege any *facts* that Western Union was guilty of any *actual* malice. (*Locke* v. *Mitchell,* 7 Cal.2d 599, 603-604 [61 P.2d 922]; *Taylor* v. *Lewis,* 132 Cal.App. 381, 384 [22 P.2d 569]; *Noonan* v. *Rousselot,* 239 Cal.App.2d 447, 452-453 [48 Cal.Rptr. 817].)

The existence of the privilege is fortified by the aforesaid code sections which impose a duty on Western Union to transmit telegraphic messages tendered to it for transmission (Civ. Code, § 2207, Pub. Util. Code, §§ 453, 7904) and impose criminal penalties (Pub. Util. Code, § 7904) and civil penalties (Civ. Code, § 2209) for failure to do so.

To hold that the mere fact of transmitting a telegram in the usual and normal course of business may impose civil liability on the telegraph company and on telegraphic personnel would of necessity require legal recognition of a right of censorship by the telegraphic company and *each* of its personnel engaged in such transmission (since if any are liable, each would be liable).

Any single telegraphic employee therefore could refuse to transmit the message since he might be held liable for libel. The chaos which such a

rule would produce is obviously unacceptable in our society. That is precisely why Public Utilities Code section 7904, *supra,* imposes criminal penalties for wilfull failure to promptly transmit *"any"* telegraphic message (with exceptions not here relevant) and Civil Code section 2209 imposes civil penalties for failure to do so. The law may sometimes appear inconsistent but it has never yet been so inconsistent as to impose civil liability for performing an act the nonperformance of which not only constitutes a crime, but also gives rise to civil liability. Appellants argue that "the law respecting Western Union, as promulgated by the Public Utilities Commission" in effect compelled it to refuse to transmit defamatory telegrams. Reference is made to Schedule of California ·P.U.C. 27 Original Sheet 19 wherein the statement is made: "Messages containing profane or obscene language will not be accepted. Messages containing defamatory statements will not be accepted if the receiving clerk of the Telegraph Company knows that the message is spurious or that the sender is acting, not in the protection of any legitimate interest, but in bad faith and for the purpose of traducing another." The quoted paragraph was prepared by Western Union and attached to its application to the P.U.C. for approval of a schedule of rates, charges and miscellaneous provisions. The schedule was approved by the P.U.C. and may therefore have the force of a regulation. However, even the P.U.C. in its official decisions recognizes that whether or not public utility communication facilities [telephonès] are used to violate the law must be determined by the courts not by the P.U.C. (*City of Los Angeles* v. *P. T. & T. Co.,* Decision No. 74655, Case No. 8832 [Sept. 11, 1968].) Whatever force, such rate schedule and the approval thereof by the P.U.C. may have, in our view it may not contravene the legislative acts hereinabove referred to which legislative acts impose criminal and civil penalties on Western Union for failing to transmit telegrams. Furthermore, we note that such provision of such rate schedule, at most would, relieve Western Union of liability if it failed to transmit such messages. It does not impose liability if Western Union transmits the messages. We conclude that such provision of such rate schedule is not legally relevant to the issues presented in the case at bar.

We conclude that Western Union has no right of censorship except in the specific instances enumerated in Public Utilities Code section 7904 which instances do not include the right to refuse to transmit telegrams which may allegedly be libelous.

Lastly, we consider appellants' contentions that they stated a cause of action for infliction of emotional distress and for violation of the right of

privacy. ■ Appellants admit that a cause of action for damages for intentional infliction of mental and emotional distress contains three elements: The act must be (1) intentional, (2) unreasonable, and (3) likely to result in illness. (*Bowden* v. *Spiegel, Inc.,* 96 Cal.App.2d 793, 795 [216 P.2d 571].) If Western Union was required by law to transmit the messages (as we conclude that it was) its conduct could not be unreasonable. The complaints, therefore, did not state a cause of action for intentional infliction of emotional distress. ■ The complaints failed to state a cause of action for invasion of privacy by Western Union because (1) the transmission was required by law, and (2) there was no communication by Western Union to the public in general. (*Timperley* v. *Chase Collection Service,* 272 Cal.App.2d 697, 699 [77 Cal.Rptr. 782]; 4 Witkin Summary of Cal. Law (8th ed. 1974) Torts, § 343, p. 2605.) Consequently, no cause of action was stated either on the theory of intentional infliction of emotional distress or violation of the right of privacy.

We therefore conclude that the acts of Western Union of which plaintiffs and cross-complainants complain are not actionable because the complaint and cross-complaint did not state facts sufficient to state any cause of action for libel, intentional infliction of emotional distress or invasion of privacy and the court properly sustained the demurrer of Western Union without leave to amend.

The judgments and each of them are affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 17, 1975.