[Civ. No. 6031. First Appellate District, Division One.—February 18, 1928.]

WILLIAM J. EVA, Appellant, v. FREDERICK J. SMITH, Respondent.

Ross & Ross for Appellant.

Wyckoff & Gardiner and Kirkbride & Gordon for Respondent.

TYLER, P. J.—Action for libel. The complaint alleges in substance that plaintiff was, and now is, a duly elected, qualified, and acting member of the city council of the city

of San Mateo; that the legislative power of said city at all times mentioned was, and now is, vested in said city council. That he was a candidate for re-election to said city council at an election held in said city on Tuesday, April 7, 1925. That the only other incumbent member of said city council who was seeking re-election at said election was one John E. Casey. That for more than nineteen years last past plaintiff has been, and now is, a resident of the city of San Mateo; that for over eleven years he was a member of its board of trustees, during two years of which he served as mayor thereof; that for about seven years he was a member of the board of trustees of the grammar school district of said city; that for the past twelve years he has been, and now is, engaged in the wholesale grocery business in San Francisco as president of the H. Janssen Company. That on Saturday, the fourth day of April, 1925, some three days prior to the election above referred to, defendant published in the ''San Mateo Times'' and in the ''Daily News Leader,'' newspapers of daily circulation, published in San Mateo County, an article as follows:

''To the Voters of San Mateo:

''From time to time there have appeared statements in the San Mateo papers as to where I stand in the present political campaign that will elect three members of the Council.

''Ordinarily, I would be loath to inject myself into the campaign. The charter of the City of San Mateo was adopted through the efforts of the progressive people of this city and they expected when they adopted this charter that it would eliminate politics that heretofore thwarted the advancement of the city. This the charter will do with the proper men and women in office.

''As to my associates on the City Council who are asking for re-election, I hold kindest personal regards, but candor, frankness and a desire to see the City of San Mateo advance systematically and along fair and honest businesslike lines compels me to state that these two incumbents should not be returned to the City Council.

''They have neither the zeal nor the temperament to administer the business of San Mateo under the present charter, as it should be administered.

"The best interests of San Mateo require the election to the City Council of Fred E. Beer, Thomas J. Brady and Albert J. Watson; men who are in sympathy with progressive and wholesome measures for the advancement of the City of San Mateo.

"The present issue has been thoroughly discussed both *pro* and *con*. I am strongly in favor of keeping the City Council free from any suspicion or taint of unfairness in the City's contracts. No contractor should be influenced to buy from any one particular firm.

"Therefore, I strongly urge, for the best interests of San Mateo, the election of Candidates Fred E. Beer, Thomas J. Brady, and Albert J. Watson.

"They will be able to render excellent service for the new charter, and the City Manager form of government which it provides for the city.

"Sincerely,
"FREDERICK J. SMITH,
"Mayor of San Mateo."

That by the foregoing false, malicious, and defamatory language defendant contrived and wickedly and maliciously intended to injure plaintiff in his good name, fame, and occupation, and to bring him into public contempt and disgrace, and to cause it to be believed that he was guilty of dishonesty as a member of the city council in influencing city contractors to buy from one particular firm, which said facts are false and known by defendant to be so. That by reason of such publication plaintiff has been brought into public disgrace and injured in his good name in the sum of $25,000. For a separate, second, and distinct cause of action plaintiff complains of the further statements in the publication concerning the plaintiff: "My desire to see the City of San Mateo advance systematically and along fair and honest businesslike lines compels me to state that these two incumbents should not be returned to the City Council." "I am strongly in favor of keeping the City Council free from any suspicion or taint of unfairness in the City's contracts. No contractor should be in any way influenced to buy from one particular firm." It is alleged that the reference to the "two incumbents" referred to the plaintiff and one John E. Casey of San Mateo.

■ A demurrer to the complaint was interposed by defendant and the same was sustained without leave to amend. Judgment dismissing the action and awarding defendant his costs followed. From this judgment plaintiff has appealed. It is claimed that the demurrer was improperly sustained for the reason that it is manifest that the article was published to disparage plaintiff, its plain import being to characterize him as the type of a man who should not be returned to public office. Taking the article as a whole, it seems clear to us that it amounts to no more than a criticism of plaintiff's qualifications for office and one which defendant was entitled to make. No malversation on the part of plaintiff is charged. On the contrary, the article states that for his associates, of whom plaintiff was one, defendant held the kindest personal regards, but by reason of lack of zeal and temperament neither incumbent should be returned to office. Nor does the article charge that plaintiff was guilty of dishonest conduct with reference to any public contracts. ■ An individual who seeks or accepts public office invites and challenges public criticism so far as it may relate to his fitness and qualifications, and it is a proper subject of comment. ■ It is, therefore, justifiable for one to communicate, *bona fide*, to the constituency any matter respecting a candidate material to the election. Having offered profert of himself for public investigation a candidate must expect some criticism of his personal fitness. No one, of course, has the right to wrongfully impute dishonesty to him, but temperament and qualifications are mere matters of opinion of which the electors are the only judges. There should be freedom in discussing, in good faith, the mental or other qualifications of any person seeking or holding public office. ■ The conduct of public officers being open to public criticism, it is for the interest of society that their acts may be freely published with fitting comment or strictures. This right, as stated, does not warrant aspersive attack on the motives or character of the officer. ■ The distinction between criticism and defamation is that the former deals only with such things as invite public attention or call for public comment, and does not follow a public man into his private life or pry into his domestic concerns, but only his work. (*Triggs* v. *Sun Printing Assn.,* 179 N. Y. 144 [103 Am. St. Rep. 841, 1

Ann. Cas. 326, 66 L. R. A. 612, 71 N. E'. 739]; 36 Cor. Jur. 1280.) ■ The right of criticism rests upon public policy and those who seek office should not be supersensitive or too thin-skinned concerning criticism of their qualifications (Newell on Libel and Slander, 4th ed., p. 536). In commenting upon a published article of the character here involved the supreme court of Nebraska used the following apt language: "It relates to the fitness of those who adhere to the ruling clique and their conduct in office. It imputes no crime to them. It employs no degrading or insulting epithets toward them, but in extravagant language denounces them as derelict in the duties of their office, unfit, unfaithful, etc. This we understand a political stump orator may do, and outside of ethics there is no rule against using the pulpit for a like purpose. It would be absurd to hold as libelous to say of a candidate for public office that he was utterly unworthy of public confidence. To maintain that proposition, all political arguments are advanced against a candidate. They are sometimes rambling but the law does not undertake to punish the man who sums them up in a single sentence." (*Arnold* v. *Ingram*, 151 Wis. 438 [Ann. Cas. 1914C, 976, 138 N. W. 111].) And, again, it has been said that it is one of the infelicities of public life that a public officer is thus exposed to critical and often unjust comment; but these, unless they pass the bounds of what the law will tolerate, must be borne for the sake of maintaining free speech. (*Sillars* v. *Collier*, 151 Mass. 50 [6 L. R. A. 680, 23 N. E. 723].) The purpose of the rule permitting fair and honest criticism is that it promotes the public good and hence is based upon public policy. (*Trigg* v. *Sun Printing Assn.*, *supra*.) In thus permitting criticism the law gives a wide liberty, there being an honest regard for the truth. Within this limit public journals, speakers, and private individuals may express opinions and indulge in criticism upon the character or habits, or mental or moral qualifications of official candidates (1 Cooley on Torts, p. 443).

■ Here, as above pointed out, no malversation in office is directly charged against plaintiff. In so far as the articles might imply that in the opinion of defendant, plaintiff was unfitted for the office he was seeking to be returned to, no complaint can be made, for defendant had the right to

express his opinion in this respect. So, also, did he have the right to assert in the event of plaintiff's return to office that in his opinion the city would not progress along fair and honest lines, due to his want of zeal and temperament. This statement cannot be construed to imply that plaintiff was dishonest for the article further states that defendant had the highest personal regard, but was wanting only in the qualifications named. Nor is it charged that plaintiff had ever been interested dishonestly or otherwise in any public contract. It is a matter of public knowledge and general comment that many public officials are lacking in these very qualifications in consequence of which public affairs do not progress along fair and honest business lines. This is about all the article complained of can possibly be said to infer and this being so plaintiff has no cause for complaint.

We have been cited by counsel for plaintiff to several California cases as supporting his contention that the article is libelous. What was said in those cases had reference to the particular facts there involved and no useful purpose would be accomplished by a review of them.

The order and judgment are affirmed.

Knight, J., and Parker, J., *pro tem.*, concurred.