[Civ. No. 21044. Fourth Dist., Div. Two. Sept. 19, 1979.]

DESERT SUN PUBLISHING COMPANY, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
CHARLES R. BLOCK, Real Party in Interest.

COUNSEL

Best, Best & Krieger, Barton C. Gaut and Meredith A. Jury for Petitioner.

No appearance for Respondent.

Rodney Robertson for Real Party in Interest.

OPINION

**GARDNER, P. J.**—In this case we hold that the publication of a letter, which, in substance, charges a candidate for public office with engaging in political chicanery is protected by the First Amendment.

In *New York Times Co.* v. *Sullivan,* 376 U.S. 254 at page 270 [11 L.Ed.2d 686 at page 701, 84 S.Ct. 710, 95 A.L.R.2d 1412], the Supreme Court observed that this country has "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."

This "profound national commitment" encompasses the constitutionally protected right not only to make responsible, but also to make irresponsible charges against those in or seeking public office. It is an essential part of our national heritage that an irresponsible slob can stand on a street corner and, with impunity, heap invective on all of us in public office. At such times the line between liberty and license blurs. However, our dedication to basic principles of liberty and freedom of expression will tolerate nothing less. The alternative is censorship and tyranny.[1]

Our political history reeks of unfair, intemperate, scurrilous and irresponsible charges against those in or seeking public office. Washington was called a murderer, Jefferson a blackguard, a knave and insane (Mad Tom), Henry Clay a pimp, Andrew Jackson a murderer and an adulterer, and Andrew Johnson and Ulysses Grant drunkards. Lincoln was called a half-witted usurper, a baboon, a gorilla, a ghoul. Theodore Roosevelt was castigated as a traitor to his class, and Franklin Delano Roosevelt as a traitor to his country. Dwight D. Eisenhower was charged with being a conscious agent of the Communist Conspiracy.

Perhaps the low point in irresponsible political vilification occurred in the Cleveland-Blaine contest where an entire presidential campaign was waged on two deathless bits of doggerel based on allegations that Mr. Blaine was dishonest, and Mr. Cleveland had sired an illegitimate child—"Blaine, Blaine, James G. Blaine, the continental liar from the State of Maine," versus "Ma, Ma, where's my Pa? Gone to the White House. Ha! Ha! Ha!"[2]

---

[1] We must not forget the infamous alien and sedition laws of 1798 under which a semiliterate Revolutionary veteran named David Brown, who had criticized the Federalists as tyrants seeking to enslave the people, was kept in jail for two years, being unable to pay a fine of $400 and costs.

[2] All of which prompted George W. Curtis of civil service reform fame to observe, "We are told that Mr. Blaine has been delinquent in office but blameless in private life whereas Mr. Cleveland has been a model of official integrity, but culpable in his personal relations. We should therefore elect Mr. Cleveland to the public office which he is so well qualified to fill and remand Mr. Blaine to the private status which he is admirably fitted to adorn."

Obviously, no rational person can approve any of the above. We merely note them as an unpleasant fact of our political background—a history of rough, crude, brawling, mudslinging, muck-raking, name-calling attacks upon those in or seeking political office. In America, one who seeks or holds public office may not be thin of skin. One planning to engage in politics, American style, should remember the words credited to Harry S. Truman—"If you can't stand the heat, get out of the kitchen."

From this "profound national commitment" to "uninhibited, robust, and wide-open" political comment has evolved some rather well established standards for judging allegedly defamatory publications on the political scene.

1. Since the essence of liberty is freedom of expression in the political arena, the law recognizes the reality of intemperate, ill-considered and rash attacks upon all of us in or seeking public office. Those engaged in political debate often engage in the use of "epithets, fiery rhetoric or hyperbole." (*Gregory* v. *McDonnell Douglas Corp.*, 17 Cal.3d 596, 601 [131 Cal.Rptr. 641, 552 P.2d 425].)

2. The right to criticize involves not only the right to criticize responsibly but to do so irresponsibly. Thus, those engaged in political debate are entitled not only to speak responsibly but to ". . . speak foolishly and without moderation." (*Baumgartner* v. *United States*, 322 U.S. 665, 674 [88 L.Ed. 1525, 1531, 64 S.Ct. 1240].)

3. A political publication may not be dissected and judged word for word or phrase by phrase. The entire publication must be examined. " 'A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it.' " (*Washington Post Co.* v. *Chaloner*, 250 U.S. 290, 293 [63 L.Ed. 987, 989, 39 S.Ct. 448].)

4. That which might be a statement of fact under other circumstances may become a statement of opinion when uttered in the political context. "An allegedly defamatory statement may constitute a fact in one context but an opinion in another, depending upon the nature and content of the communication taken as a whole." (*Good Government Group of Seal Beach, Inc.* v. *Superior Court*, 22 Cal.3d 672, 680 [150 Cal.Rptr. 258, 586 P.2d 572].)

We turn to the instant case.

Petitioner newspaper (hereafter Sun) printed a letter authored by codefendant Bogert (not a party to these proceedings) which accused the real party in interest (hereafter Block) of political chicanery. (A copy of the letter is attached as an appendix.) Block was a candidate for office as a member of the board of directors of the Desert Hospital in Palm Springs. Block sued for libel, Sun filed a motion for summary judgment which was denied. This petition followed.

■ A motion for summary judgment in libel actions involving First Amendment rights is an approved procedure. ". . . because unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of cases involving free speech is desirable." (*Good Government Group of Seal Beach, Inc.* v. *Superior Court, supra,* 22 Cal.3d 672, 685.) It takes no citation of authority to point out that a motion for summary judgment should not be granted if any triable issue of fact exists.

■ The letter in this case cannot be made the basis for a libel action. It does not impute crime or dishonesty to the defendant. It is the type of a letter of the "kind typically generated in a spirited dispute in which the loyalties and subjective motives of rivals are attacked and defended." (*Good Government Group of Seal Beach, Inc.* v. *Superior Court, supra,* 22 Cal.3d 672, 681.)

As indicated, Block was a candidate for election to the board of directors of Desert Hospital. The newspaper and the writer of the letter were supporting a rival candidate. The portions of the letter to which Block objects accused him of "contrived public opinion polls, unfounded statements, emphatic denials, committees no one ever heard of, attacks on straw men and a lot of slick, big-time, expensive political public relations." It also charged Block with an "amateurish job of chicanery." It refers to Block as being a "Desert Dirty Trickster," says he used "touched-up photographs," and presented the "same ol' formula politics-as-usual techniques of the L.A. research and political packaging agency crowd" and refers to his "fancy L.A. political counsellor-pollster-manipulator."

It appears to us that, distasteful as this letter may have been to Block, it sounds remarkably similar to the usual and ordinary kind of political rhetoric which is all too often composed of equal parts of bombast, hyperbole, and billingsgate.

A reader of this letter could come to no other conclusion but that the writer has accused Block of being a city slicker who is trying to bamboozle the good citizens of Palm Springs with the old snake-oil routine. That is the content of the letter—the opinion of the writer that Block is a political huckster. As such, it is a statement of opinion, not fact. It may not be the basis for a libel suit.

Once an individual decides to enter the political wars, he subjects himself to this kind of treatment. As we have pointed out, deeply ingrained in our political history is a tradition of free-wheeling, irresponsible, bare knuckled, Pier 6, political brawls. Perhaps political campaigns should be conducted under some kind of Marquis of Queensberry rules. Unhappily, they are not, and recent efforts to change this tradition have met with resounding failure.

This letter, distasteful, offensive and unpleasant though it may be to Block, clearly falls within the protected opinion type of political comment.

Let a writ of mandate issue directing respondent court to grant petitioner's motion for summary judgment.

Tamura, J., and Morris, J., concurred.

### APPENDIX

"Editor, Desert Sun:

"It seems as if we're having a Desert Dirty Trickster experience during the Desert Hospital board of directors election campaign. The candidacy of Dr. Block has contrived public opinion polls, unfounded statements, emphatic denials, committees no one ever heard of, attacks on straw men and a lot of slick, big-time, expensive political public relations. But, what an amateurish job of chicanery.

"Poor ol' evil Howard Wiefels, the 7-year Mayor of Palm Springs, is being portrayed as a Boris Karloff with his hearse parked out back of the Hospital, waiting to profit from his service on the Hospital Board. The ol'

boys at the local luncheon club are painted as a circle of establishment powerbrokers cuttin' up the political pies. Meanwhile, young Dr. Block, dressed in white in the best media candidate tradition, coat over shoulder, in touched-up photographs in newspaper ads, peers into the future of Desert Hospital and promises us a 'simple and easily implemented plan which will raise millions of dollars yearly . . . (and) cost no one a dime.'

"The good doctor has not offered one substantive program, has given not one positive suggestion, made not one public appearance where he can be questioned. All we have are the same ol' formula politics-as-usual techniques of the L.A. research and political packaging agency crowd.

"Good Doctor, you insult my intelligence. Didn't your fancy L.A. political counsellor-pollster-manipulator tell you, you can't insult the voter and expect to get elected?

"FRANK BOGERT

"Palm Springs"