[Civ. No. 69703. Second Dist., Div. Three. Feb. 16, 1984.]

BELA BOTOS, Plaintiff and Appellant, v.
LOS ANGELES COUNTY BAR ASSOCIATION,
Defendant and Respondent.

COUNSEL

Bela Botos, in pro. per., for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard and David B. Parker for Defendant and Respondent.

OPINION

ARABIAN, J.—

INTRODUCTION

In a case of first impression we are called upon to determine whether an action for defamation may be maintained against a local bar association by an unsuccessful candidate for elective judicial office, following the association's publication of an evaluation which concluded the candidate was "not qualified" to perform the duties of the office sought.

We conclude the action may not be maintained.

STATEMENT OF FACTS

The complaint, which was couched in a single cause of action for defamation, was filed by appellant, Bela Botos (Botos) against respondent, the Los Angeles County Bar Association (LACBA) and several of its officers and members.[1] Botos is seeking special, compensatory and exemplary damages. He alleges the following facts in his complaint and the several exhibits incorporated therein by reference:

Botos is a practicing attorney and has been a member of the California Bar for the past 18 years, enjoying a good name and reputation, both personally and professionally.

On February 10, 1982, he declared himself a candidate for the office of Judge of the Superior Court of Los Angeles County, office no. 2.

After his official registration, on or about March 1, 1982, LACBA wrote to Botos (and all other candidates for local judicial office) and requested that he complete and return a biographical questionnaire for use by the judicial evaluation committee of LACBA in connection with their preparation of evaluation ratings. Botos failed to respond.

On or about March 15, 1982, LACBA again requested the same information. On March 20, 1982, Botos responded by letter, refused to provide the requested information and challenged the right of LACBA to evaluate candidates for judicial office. His position was that LACBA's "only right is to vote for or against the candidate." Botos refused to give LACBA permission to evaluate him and directed LACBA's attention to the provi-

---

[1]The individual defendants were not served.

sions of Elections Code section 29630, which pertains to criminal intimidation of the electorate.[2]

In a letter dated April 30, 1982, LACBA advised Botos that he had been given a "tentative evaluation" of "not qualified." Botos was offered an option to discuss his rating with the judicial evaluation committee.

On May 6, 1982, Botos again responded by letter, objected to the evaluation and charged that LACBA was acting "against the law" and that the tentative rating was "defamatory and injurious." He warned that any release of the evaluation would cause him to seek "all proper legal remedies."

LACBA continued its review and investigation of Botos and by letter of May 21, 1982, advised him that after due deliberation and consideration, the judicial evaluation committee had evaluated him as "not qualified" for the judicial office for which he sought election. On or about May 25, 1982, the report of LACBA was released and published.[3] Newspapers in Los Angeles County reported the following statements:

Superior Court "Office #2: . . . Attorney Bela Botos, not qualified."

"Attorney Bela Botos, 'has not demonstrated the [necessary] experience and competence.'"

Botos' complaint alleged the falsity of LACBA's publication, malice, special damages, and the other technical requirements of a cause of action for libel.

---

[2]Elections Code section 29630 states: "Every person who makes use of or threatens to make use of any force, violence, or tactic of coercion or intimidation, to induce or compel any other person to vote or refrain from voting at any election or to vote or refrain from voting for any particular person or measure at any election, or because any person voted or refrained from voting at any election or voted or refrained from voting for any particular person or measure at any election is punishable by imprisonment in the state prison for 16 months or two or three years."

[3]In addition to the evaluation, LACBA's public report explained the composition and structure of its judicial evaluation committee and outlined its procedures. It stated that the standards used "necessarily involve and contemplate a *qualitative evaluation* and are, therefore, very different from the mere eligibility provisions of the California Constitution . . . ." (Italics added.) There was an explanation that a "not qualified" evaluation meant the candidate lacked "some or all of the qualities of professional ability, experience, competence, integrity and temperament indicative of fitness to perform the judicial function satisfactorily." The report indicated the scope of the evaluations were limited: "The Committee firmly emphasizes that it has limited its evaluations only to a determination of the candidate's present qualifications for judicial office and it does not purport in any way to reflect upon any candidate's capabilities for any other office or as a practicing attorney or in any other endeavor. *The following final evaluations of the Judicial Evaluation Committee are limited to the Committee's considered opinion as to the candidate's present ability to serve as a judge for the court to which he or she seeks election . . . .*" (Italics added.)

LACBA demurred to the complaint on two separate grounds: LACBA's published comment that Botos is "not qualified" to serve as a superior court judge (1) is not susceptible to a defamatory meaning under Civil Code section 45[4] and (2) is an expression of opinion which is protected speech under the First Amendment of the United States Constitution and the California Constitution.

The demurrer was sustained on the grounds urged without leave to amend and this appeal followed the subsequent dismissal of the action.

## DISCUSSION

"Good name in man and woman, dear my Lord,

Is the immediate jewel of their souls:

Who steals my purse steals trash; 'tis something, nothing;

'Twas mine, 'tis his and has been slave to thousands;

But he that filches from me my good name

Robs me of that which not enriches him

And makes me poor indeed."[5]

Not unlike Iago's lament, Botos' complaint is that he was defamed when LACBA published their evaluation of him as not qualified to perform the duties of a superior court judge. The utterance having appeared in print, the question is whether it is libelous. (See Civ. Code, § 44.)[6]

---

[4]Civil Code section 45 provides: "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

[5]William Shakespeare, Othello, Act III, scene 3, line 155.

[6]"The modern tort of defamation developed from two sources. The action for written defamation, called libel, grew out of a criminal action in the Star Chamber, while the action for spoken defamation, called slander, arose in the ecclesiastical courts. When the common-law courts took jurisdiction over slander, they allowed recovery only where pecuniary loss was proved, or where the slanderous accusation was one of a few which were considered so serious as to create a great probability that such loss would be suffered. In the Star Chamber, however, only reputational harm was necessary for the crime of libel. When, upon the abolition of that tribunal, libel became the basis for a tort action in the common-law courts, this basis of liability was retained. Thus the outcome of many actions became dependent upon the form in which the defamation was published; courts might allow recovery for a written defamatory statement read by few persons but not for an identical statement made in a speech before a large audience. The difference has been justified on the ground that since libel is in a more permanent form and will be taken more seriously, pecuniary harm is so probable that it can be presumed." (*Developments in the Law—Defamation* (1956) 69 Harv.L.Rev. 875, 887, fns. omitted.)

This is the first time the California courts have addressed the question whether the publication by a local bar association of an opinion regarding the qualifications of a candidate for judicial office may subject the association to an action for libel.[7]

■ In California a libel is a "false and unprivileged" written publication which "exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, § 45.)

■ "An essential element of libel . . . is that the publication in question must contain a false statement of *fact*. . . . This requirement . . . is constitutionally based. The reason for the rule, well stated by the high court, is that 'Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges or juries but on the competition of other ideas.' (*Gertz* v. *Robert Welch, Inc.* (1974) 418 U.S. 323, 339-340 [41 L.Ed.2d 789, 805, 94 S.Ct. 2997], fn. omitted. . . .) In this context courts apply the Constitution by carefully distinguishing between statements of opinion and fact, treating the one as constitutionally protected and imposing on the other civil liability for its abuse. [¶] The critical determination of whether the alleged defamatory statement constitutes fact or opinion is a question of law." (*Gregory* v. *McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600-601 [131 Cal.Rptr. 641, 552 P.2d 425]; see *Okun* v. *Superior Court* (1981) 29 Cal.3d 442, 450-451 [175 Cal.Rptr. 157, 629 P.2d 1369], cert. den. 454 U.S. 1099 [70 L.Ed.2d 641, 102 S.Ct. 673].)

■ It is well settled law that "mere expression of *opinion* or severe criticism is not libelous, even though it adversely reflects on the fitness of an individual for public office." (*Yorty* v. *Chandler* (1970) 13 Cal.App.3d 467, 472-473 [91 Cal.Rptr. 709], italics added; see *Sierra Breeze* v. *Superior Court* (1978) 86 Cal.App.3d 102, 106 [149 Cal.Rptr. 914], *Miller* v. *Bakersfield News-Bulletin, Inc.* (1975) 44 Cal.App.3d 899, 903 [119 Cal.Rptr. 92], *Scott* v. *McDonnel Douglas Corp., supra,* 37 Cal.App.3d at pp. 289, 290.)

Although Botos was burdened with the committee's evaluation of him as "not qualified" to serve on the superior court bench, it was only their

---

[7]A similar issue was addressed by the Illinois courts in *Anagnost* v. *Chicago Bar Ass'n* (1980) 83 Ill.App.3d 466 [38 Ill.Rec. 902, 404 N.E.2d 326]. On appeal, the conclusion of the trial court that the comments of the Chicago Bar Association were not libelous was affirmed.

collective *opinion* of him, based on a majority or greater vote.[8] As a collective judgment of his qualifications, it may have ranged from being well founded to utterly wrong. ■■■ However, LACBA, like everyone else, has a right to express its views on who is or is not qualified for judicial office. (See *Yorty* v. *Chandler, supra,* 13 Cal.App.3d at p. 473.)

By entering the arena of public elections, Botos subjected himself to evaluative comment, not only from the local bar association, but also from any and all interested persons. *(Eva* v. *Smith* (1928) 89 Cal.App. 324, 328 [264 P. 803]; see *Yorty* v. *Chandler, supra,* 13 Cal.App.3d at p. 473.) There is "good authority for believing that grapes do not grow on thorns nor figs on thistles." *(Coleman* v. *MacLennan* (1908) 78 Kan. 711, 739 [98 P. 281, 291].)

The comments of the court in *Eva* v. *Smith, supra,* 89 Cal.App. 324, are particularly apt: "An individual who seeks or accepts public office invites and challenges public criticism so far as it may relate to his fitness and qualifications, . . . It is, therefore, justifiable . . . to communicate . . . to the constituency any matter respecting a candidate material to the election. Having offered profert of himself for public investigation a candidate must expect some criticism of his personal fitness. . . . *[T]emperament and qualifications are mere matters of opinion of which the electors are the only good judges.* . . . The right of criticism rests upon public policy and those who seek office should not be supersensitive or too thin-skinned concerning criticism of their qualifications . . . . '*It would be absurd to hold as libelous to say of a candidate for public office that he was utterly unworthy of public confidence.* . . .' " *(Id.,* at pp. 328-329; italics added.)

In *Desert Sun Publishing Co.* v. *Superior Court* (1979) 97 Cal.App.3d 49 [158 Cal.Rptr. 519], the court pointed out that "[o]ur political history reeks of unfair, intemperate, scurrilous and irresponsible charges against those in or seeking public office. Washington was called a murderer, Jefferson a blackguard, a knave and insane (Mad Tom), Henry Clay a pimp, Andrew Jackson a murderer and an adulterer, and Andrew Johnson and Ulyssess Grant drunkards. Lincoln was called a half-witted usurper, a baboon, a gorilla, a ghoul. Theodore Roosevelt was castigated as a traitor to his class, and Franklin Delano Roosevelt as a traitor to his country. Dwight D. Eisenhower was charged with being a conscious agent of the Communist Con-

---

[8]The special committee on judicial evaluations was appointed by the president of LACBA during the administration year 1981-1982. Its composition represented a cross-section of the legal community, as it included minorities, women and men, public and private sector lawyers, sole practitioners and members of small, medium and large law firms. The preponderance of the membership was said to possess broad litigation experience and knowledge concerning those characteristics and attributes required for judicial office.

spiracy." (*Id.*, at p. 51; see *Grillo* v. *Smith* (1983) 144 Cal.App.3d 868, 872 [193 Cal.Rptr. 414].)

While there is general agreement that a good reputation is one of man's choicest treasures and that its uncompensated loss through false charges should be required only where it is clear the public good requires this sacrifice (Noel, *Defamation of Public Offices and Candidates* (1949) 49 Colum.L.Rev. 875, 891), clearly the public is well served by public comment of bar associations and others concerning the qualifications of candidates for judicial office. Further, a local bar association has a vested interest in aiding the public to form sound judgments concerning the quality of judicial candidates.

An unfavorable evaluation by such an association is not akin to the ringing of a leper's bell nor a drumming out of the corps. The vast majority of candidates simply accept the ultimate results of the election and carry on unencumbered by residual memory. Some even win the subject seat and have the last laugh. Moreover, we are reminded of the wise words credited to President Harry S. Truman: "If you can't stand the [evaluative] heat, get out of the [electoral] kitchen." (See *Desert Sun Publishing Co.* v. *Superior Court, supra,* 97 Cal.App.3d at p. 52.)

We hold, therefore, that LACBA's published *opinion* that Botos is "not qualified" to sit as a superior court judge is nonlibelous as a matter of law. (See *Yorty* v. *Chandler, supra,* 13 Cal.App.3d 467; and see *Miller* v. *Bakersfield News-Bulletin, Inc., supra,* 44 Cal.App.3d at p. 902.)[9] In so holding, we are not unmindful of Botos' concern that his reputation has been injured by the unflattering LACBA evaluation of his fitness for judicial office. However, there exists no protective mantle from fair, open and honest comment when one seeks a place of public trust and service. The hallowed hall of justice is not a sheltering inn for members of the bar who may not possess the attributes of courage, character, habit, industry, mentality and morality required of those who would sit in the seat of judgment.

### CONCLUSION

■ An order sustaining a demurrer will be upheld on appeal where, as here, the complaint fails to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).)

---

[9]Since an essential element of libel is that the publication in question contain a false statement of *fact,* we need not review the trial court's determination that LACBA's statement is not susceptible to a defamatory meaning. (See *Okun* v. *Superior Court, supra,* 29 Cal.3d at p. 450.)

The judgment is affirmed.

Klein, P. J., and Lui, J., concurred.