62 F.3d 1427
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard P. WENTNER, Plaintiff-Appellant,
v.
RIDGEWOOD ENERGY CORPORATION; Robert Swanson, Hall-Houston
Offshore, Hall-Houston Oil Co.; Does 1 - 10,
Defendants-Appellee.
 No. 94-15345.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jun 12, 1995.
Decided Aug. 9, 1995.
 
 Before: HUG, ALARCON, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Richard P. Wentner appeals from the district court's judgment in favor of defendants Ridgewood Energy Corporation, Robert Swanson, Hall-Houston Offshore, and Hall-Houston Company (collectively "Ridgewood"). The district court dismissed Wentner's securities law claims for failure to state a claim on the ground that the complaint fails to plead fraud with the particularity required under Rule 9(b) of the Federal Rules of Civil Procedure. The district court also granted summary judgment in favor of Ridgewood Energy Corporation and Swanson as to Wentner's state law claims for wrongful termination, breach of employment contract, fraud in employment promises, defamation, intentional infliction of emotional distress, and breach of investment contract.
 
 
 3
 Wentner contends that the district court erred in dismissing his securities law claims. Wentner asserts that his third amended complaint pleads fraud with sufficient particularity because it alleges that the defendants knowingly made false and misleading projections about an investment program. Wentner further contends that the district court abused its discretion in denying his request for leave to amend his complaint and in denying his motion for reconsideration. Finally, Wentner contends that the district court erred in granting summary judgment in favor of Ridgewood Energy Corporation and Swanson as to Wentner's state law claims.
 
 
 4
 We affirm the district court's judgment dismissing Wentner's securities law claims because the complaint fails to plead the circumstances constituting fraud as required under Rule 9(b). We also affirm the district court's grant of summary judgment as to Wentner's state law claims because there is insufficient evidence to create a triable issue of fact regarding these claims.
 
 I. PERTINENT FACTS AND PROCEDURAL HISTORY
 
 5
 Ridgewood Energy Corporation employed Wentner as a securities wholesaler from January of 1989 through June of 1990. As a wholesaler, Wentner marketed Ridgewood's investment products to broker-dealers who, in turn, marketed them to potential investors. Beginning in 1986, Ridgewood offered, as investment products, a series of "drilling and completion" programs, designated by names such as "1986-I" and "1986-II." Program investors purchase a limited partnership interest in a series of "projects" which involve the exploration and drilling of natural gas wells in the Gulf of Mexico. Hall-Houston Oil Company, an independent oil and gas company, operates Ridgewood Energy Corporation's projects. Wentner's personal investment of $94,500 in the "1989-II" program forms the basis of his securities law claims.
 
 
 6
 Wentner began doubting the estimated returns projected for Ridgewood's investment programs in early 1990. As a result, he asked for information concerning the programs' decline curves and reserve studies. Wentner also informed his supervisors that Minerex, a company hired by Ridgewood to perform reserve studies, had been dishonest with him in the past. In May of 1990, Charles Harmon, Wentner's immediate supervisor, notified Wentner at a dinner meeting that his employment would terminate at the end of June.
 
 
 7
 On August 17, 1990, Wentner filed an action in state court against Ridgewood Energy Corporation and its president, Robert Swanson, alleging wrongful termination and defamation. The defendants removed the case to the district court on the basis of diversity jurisdiction. Wentner amended his complaint to add the securities law claims and to join Hall-Houston Offshore and Hall-Houston Oil Company as defendants to those claims.
 
 
 8
 On December 10, 1991, the district court dismissed Wentner's securities law claims for failure to state a claim. The district court granted Wentner's request for leave to amend his complaint. Wentner filed a third amended complaint on January 17, 1992.[1] The district court subsequently dismissed Wentner's securities law claims with prejudice. Discovery proceeded regarding Wentner's state law claims. On July 22, 1993, Wentner moved for reconsideration of the dismissal of his securities law claims seeking deletion of all "with prejudice" references. The district court denied Wentner's motion for reconsideration.
 
 
 9
 On July 22, 1993, Ridgewood moved for summary judgment of Wentner's state law claims. On January 20, 1994, the district court granted partial summary judgment in favor of Ridgewood on all claims except for one aspect of his breach of contract claim. On the same date, the district court entered a judgment in favor of Wentner on the remaining breach of contract claim pursuant to the parties' stipulation.
 
 II. DISMISSAL OF SECURITIES LAW CLAIMS
 
 10
 Wentner's third amended complaint alleges violations of federal and state securities laws.[2] The essence of Wentner's securities claims is that Ridgewood made false and misleading projections in its offering materials for the 1989-II program. See Schneider v. Vennard (In re Apple Computer Sec. Litig.), 886 F.2d 1109, 1113 (9th Cir. 1989), cert. denied, 496 U.S. 943 (1990) (projection constitutes misrepresentation if plaintiff shows that defendant had no reasonable basis for projection). Specifically, the complaint alleges that the following projections constitute misrepresentations: (1) defendants projected an annual cash flow from the program for 9 to 10 years, with the production decline curve in the 5 to 10% range; (2) defendants projected a payout from the program of 298.25%; (3) defendants projected the reserve potential of the wells to be 165 billion cubic feet; and (4) defendants projected a payout of 2.5 to 3.0% per month on the investment.
 
 
 11
 The district court dismissed Wentner's securities law claims for failure to state a claim, in part on the basis that the pleadings did not comply with Rule 9(b) of the Federal Rules of Civil Procedure.[3] We review the district court's dismissal of a complaint at the pleadings stage de novo. Everest & Jennings v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994). On review, we accept all of Wentner's allegations of material fact as true and construe them in the light most favorable to Wentner to determine whether it is "beyond doubt that [he] can prove no set of facts in support of his ... claim." Id. (citations omitted).
 
 
 12
 Wentner's securities law claims are premised on the allegation that "the defendants engaged in a common fraudulent scheme in connection with the offer and sale of limited partnership interests in the 1989-II program." These claims are grounded in fraud and thus are subject to the special pleading requirements of Rule 9(b).[4] Decker v. Glenfed, Inc. (In re Glenfed, Inc. Sec. Litig.), 42 F.3d 1541, 1545 (9th Cir. 1994) (en banc).
 
 
 13
 Rule 9(b) requires particularized allegations of the circumstances constituting fraud. Glenfed, 42 F.3d at 1545, 1547. To meet this requirement, the plaintiff must do more than plead the time, place, and content of an alleged misrepresentation. Id. at 1548. The plaintiff must also "set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made." Id. at 1549. One way the plaintiff can meet this burden is by indentifying inconsistent contemporaneous statements or information available to the defendants, such as internal reports. Id.
 
 
 14
 Where the plaintiff relies on inconsistent contemporaneous information, we have considered pleadings in compliance with Rule 9(b) if such information is directly inconsistent with the alleged misrepresentation. See, e.g., Glenfed, 42 F.3d at 1550 (defendant's statement that it expected no loss on its subsidiaries' sale inconsistent with contemporaneous statements at board meetings and in strategic plan that loss appeared likely); Greenwald v. Wells Fargo & Co. (In re Wells Fargo Sec. Litig.), 12 F.3d 922, 926-27 (9th Cir. 1993), cert. denied, 115 S. Ct. 295 (1994) (plaintiffs' allegations that defendants failed to disclose the problematic status of specific loans extended to identified borrowers sufficient to demonstrate that defendants fraudulently understated loan loss reserves).
 
 
 15
 Wentner contends that his complaint complies with Rule 9(b) because it alleges that the 1989-II program projections were false and misleading when they were made. Wentner relies on his allegations that the defendants possessed internal contemporaneous reports indicating that prior investment programs failed to meet their projections. For example, the complaint states that "Ridgewood and Hall-Houston previously promoted similar partnerships that had not performed as projected by Hall-Houston's geological and economic analyses."[5]
 
 
 16
 In dismissing Wentner's securities law claims, the district court concluded that the complaint did not "specify why the failure of the other programs to meet projected returns should have alerted defendants that the 1989-II Program could not meet its projected returns." The district court further stated that Wentner had not "pleaded a sufficient connection between [the prior program] wells and the 1989-II wells." After carefully considering the allegations contained in Wentner's third amended complaint, we affirm the district court's dismissal of Wentner's securities law claims for failure to comply with the pleading requirements of Rule 9(b).
 
 
 17
 Wentner's complaint does not specify why the results from prior programs support an inference that the 1989-II program projections were false when they were made. We are unpersuaded by Wentner's contention that Ridgewood's reference to previous investment programs as "substantially similar" to the 1989-II program, in offering and related materials, supports such an inference.
 
 
 18
 The investment programs at issue consist of a group of investors who purchase an interest in the extraction of natural gas from wells in the Gulf of Mexico. The 1989-II Program Summary states that the partnership "will invest in a minimum of five separate Gulf of Mexico multi-well projects, with a total of approximately 10 to 15 wells. Project operations will include: [t]he construction of production platforms and pipelines for successful wells[;] [t]he completion of successful wells[;] [and] [t]he drilling of developmental and exploratory wells." The accuracy of projections for such investment programs will depend upon the characteristics of the designated multi-well projects. Wentner's complaint is deficient because it fails to allege a similarity between the nature of the wells in the prior programs and the wells designated for the 1989-II program. Moreover, there is no indication in the complaint that the geographic location of the wells and the area of exploration identified for the 1989-II program is similar to the location of prior programs, aside from the fact that all of the wells are in the Gulf of Mexico.
 
 
 19
 We recognize that in identifying the above deficiencies we are placing a burden on Wentner to set forth evidentiary facts in his complaint not normally required at the pleadings stage. However, this burden stems from Rule 9(b), which requires particularity as to the circumstances of the alleged fraud. We are not free to ignore the added pleading requirements of this rule where the claims at issue are grounded in fraud. Glenfed, 42 F.3d at 1547-48 n.7.
 
 
 20
 The speculative nature of Ridgewood's investment programs is suggested by the statement in the 1989-II Program Summary that 12% of the wells drilled during previous programs were "dry." In hindsight, Ridgewood's 1989-II projections were inaccurate because they forecasted a greater return than investors would actually receive. However, given the speculative nature of the investment and the lack of inconsistent contemporaneous information regarding the 1989-II program, we find no allegation in the complaint to support an inference that the defendants engaged in fraud.
 
 
 21
 In sum, Wentner's complaint does not allege sufficient facts to connect Ridgewood's prior investment programs to the 1989-II program. The complaint thus fails to explain why Ridgewood should have known that its 1989-II program projections were false when made. Accordingly, we conclude that the district court did not err in dismissing Wentner's securities law claims because the complaint does not plead fraud with the particularity required under Fed. R. Civ. P. 9(b).
 
 Denial of Leave to Amend
 
 22
 The district court dismissed Wentner's securities law claims with prejudice because "Wentner's causes of action [could] not be remedied by amending his pleading again; allegation of other facts consistent with these claims would not cure the deficiency." We review a district court's denial of leave to amend for an abuse of discretion. National Abortions Fed'n v. Operation Rescue, 8 F.3d 680, 681 (9th Cir. 1993).
 
 
 23
 In granting the first motion to amend the complaint, the district court spelled out the complaint's deficiencies. Wentner was instructed by the court that there was an insufficient nexus between the prior programs and the 1989-II program to satisfy the pleading requirements of Rule 9(b). He failed to cure this deficiency in his third amended complaint.
 
 
 24
 "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) (citations omitted). Accordingly, we conclude that the district court did not abuse its discretion in denying Wentner's subsequent request for leave to amend. See Allen, 911 F.2d at 373 ("[a]bsent a definite and firm conviction that the district court committed a clear error of judgment, [the reviewing court] will not disturb the district court's decision [to deny leave to amend]").
 
 Motion for Reconsideration
 
 25
 Wentner filed a motion for reconsideration fifteen months after the district court dismissed the securities law claims, seeking deletion of all "with prejudice" references. Wentner contends that the district court erred in denying his motion for reconsideration because the newly acquired evidence set forth in support of his motion connects the prior programs to the 1989-II program. Where the denial of a motion for reconsideration is an implicit denial of a request for leave to amend, we review the district court's action for abuse of discretion, mindful of the strong policy in favor of permitting amendment. CHoPP Computer Corp. v. United States, 5 F.3d 1344, 1350 (9th Cir. 1993), cert. denied, 115 S. Ct. 63 (1994).
 
 
 26
 The new evidence that assertedly provides a connection between the prior investment programs and the 1989-II program includes: (1) deposition testimony by Ridgewood executives that the 1989-II projections were based on a model that remained unchanged throughout the period from the 1986-I program through the 1989-II program; and (2) deposition testimony by Ridgewood executives that Ridgewood's projections for the 1989-III program were less optimistic because of reserve studies concerning Ridgewood's prior programs which were in Ridgewood's possession prior to the marketing of the 1989-II program.
 
 
 27
 The allegation that Ridgewood used the same methods to make projections for the 1989-II program as it used for prior programs does not allege facts showing whether the characteristics of the prior programs were similar to the characteristics of the 1989-II program. The newly acquired evidence does not contain facts showing that the wells and geographic location identified for the 1989-II program were similar to the wells and locations of prior programs. Because there is no basis from which to conclude that the 1989-II and prior programs were similar in respects material to the calculation of the projections, this allegation does not support an inference that the 1989-II program projections were false when made.
 
 
 28
 For the same reason, the fact that the 1989-III program projections were more conservative than prior projections does not support the inference that the defendants knew that the 1989-II program projections were false when made. Accordingly, we conclude that the district court did not abuse its discretion in denying Wentner's motion for reconsideration.
 
 III. SUMMARY JUDGMENT OF STATE LAW CLAIMS
 
 29
 The district court granted summary judgment in favor of Ridgewood and Swanson ("Ridgewood")[6] as to Wentner's state law claims for wrongful termination, breach of contract, fraud in employment promises, defamation, and intentional infliction of emotional distress. We review a district court's grant of summary judgment de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir. 1992).
 
 
 30
 In considering whether summary judgment was properly granted, we review the record in the light most favorable to Wentner to determine whether any genuine issues of material fact exist regarding his claims. Id. We affirm the district court's grant of summary judgment because we conclude that there are no genuine issues of material fact and Ridgewood is entitled to judgment as a matter of law regarding each claim.
 
 
 31
 A. Wrongful Termination in Violation of Public Policy
 
 
 32
 Wentner contends that Ridgewood wrongfully terminated him because he began asking questions about Ridgewood's investment programs. Wentner theorizes that his termination violated public policy because Ridgewood fired him in order to prevent him from discovering, and then reporting, Ridgewood's alleged securities law violations. Wentner's argument is a novel variation on the policy against firing whistle-blowers, grounded in California Labor Code Sec. 1102.5(b), "which prohibits employer retaliation against an employee who reports a reasonably suspected violation of the law to a government or law enforcement agency ...". Collier v. Superior Court, 228 Cal. App. 3d 1117, 1123 (1991) (emphasis added).
 
 
 33
 The record indicates that Ridgewood terminated Wentner subsequent to his request for information already released to persons outside the company. Wentner did not report, or threaten to report, any alleged securities law violations until long after his discharge. Wentner's deposition testimony establishes that he was unaware of any alleged violations at the time he was terminated because he continued to be "gung ho on [Ridgewood's investment] programs," even after he was notified that he was being terminated. In fact, the first time Wentner mentioned such violations was forty-five days after his termination in a demand letter sent to Ridgewood.
 
 
 34
 The California Supreme Court has not squarely decided whether a plaintiff can support a claim for wrongful termination based on a whistle-blower theory where the employee was unaware of and did not report an alleged illegality until long after his discharge. Where an issue of state law is unresolved, a federal court must consider "all available data," including appellate court decisions in California or decisions from other jurisdictions, to anticipate how the California Supreme Court would decide the issue. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).
 
 
 35
 The California courts have clearly extended protection under the whistle-blower statute to employees who report illegalities to their employers, where the violation implicates the public interest. Collier, 228 Cal. App. 3d at 1123, 1127; see e.g., Hentzel v. Singer Co., 138 Cal. App. 3d 290, 298 (1982) (employee discharged after complaining about unsafe working conditions to employer). However, California courts have not protected employees who, like Wentner, were unaware of and did not report an alleged violation prior to their termination. See Pugh v. See's Candies, Inc., 116 Cal. App. 3d 311, 323 (1981) (appellant's theory failed where "there was no evidence that appellant ever communicated to [his employer] his belief or opinion that the existing contract" violated the law).
 
 
 36
 The cases Wentner relies upon to buttress his theory are inapposite. In each of these cases, the employer discharged the plaintiff for reporting an alleged violation of law, or attempting to enforce a law implicating fundamental state public policy, or both. See e.g., Gould v. Maryland Sound Indus., Inc., 31 Cal. App. 4th 1137, 1149 (1995) (plaintiff informed management that he and co-workers were not being paid overtime wages); Parada v. City of Colton, 24 Cal. App. 4th 356, 360-61 (1994) (plaintiff reported to supervisor that a building inspector was allowing violations of building codes); Holmes v. General Dynamics, Corp., 17 Cal. App. 4th 1418, 1432 (1993) (plaintiff disclosed to manager that the company had overcharged the government); Shoemaker v. Myers, 2 Cal. App. 4th 1407, 1414 (1992) (plaintiff reported that officials of the Department of Health Services improperly approved funding for health centers utilizing unlicensed personnel to perform medical functions); Blom v. N.G.K. Spark Plugs (U.S.A.), Inc., 3 Cal. App. 4th 382, 388-89 (1992) (plaintiff terminated in retaliation for attempts to eliminate illegal employment discrimination); McQuary v. Bel Air Convalescent Home, Inc., 684 P.2d 21, 23 (Or. 1984) (plaintiff threatened to report patient abuse by nursing home administrator).
 
 
 37
 We decline the invitation to extend protection under the California whistle-blower statute to an employee who is terminated before he or she has reported, or even become aware of, an alleged violation of law. There is no precedent in California case law, nor is there a compelling policy consideration, to justify such an extension.
 
 
 38
 In addition to his whistle-blower theory, Wentner contends that he was wrongfully terminated for exercising his statutory right as a general partner, and for performing his legal duty of due diligence. An employer may violate public policy by discharging an employee for exercising a statutory right or performing a statutory obligation. Gantt v. Sentry Ins., 824 P.2d 680, 684 (Cal. 1992).
 
 
 39
 To recover in tort for wrongful discharge in violation of public policy, the plaintiff must show that the employer violated a substantial policy that affects society at large and is grounded in a statutory or constitutional provision. Id. California courts have recognized wrongful discharge actions implicating fundamental policy concerns such as health, safety, or crime prevention. See cases cited in DeSoto, 957 F.2d at 659. Wentner's alleged attempts to act as a fiduciary to the 1989-II program's limited partners, and to exercise due diligence, do not implicate a substantial public policy concern which justifies a wrongful termination claim.
 
 
 40
 B. Breach of Implied-in-Fact Employment Contract
 
 
 41
 Wentner's employment with Ridgewood was not subject to a written agreement. Wentner contends, however, that he presented sufficient evidence to create a genuine issue of material fact regarding whether Ridgewood made a legally enforceable promise to him of continuing employment. See Pugh, 116 Cal. App. at 320, 324-25 (presumption that an unspecified employment term may be terminated at the will of either party is subject to contrary evidence that the parties expressly or impliedly agreed that the employee could only be discharged for good cause).
 
 
 42
 In determining whether an implied-in-fact promise for continued employment exists, the California Supreme Court has considered the following factors: the personnel policies or practices of the employer; the employee's longevity of service; the actions or communications of the employer reflecting assurances of continued employment; and the practices of the industry in which the employee is engaged. Foley v. Interactive Data Corp., 47 Cal.3d 654, 680 (1988) (citing Pugh, 116 Cal. App. 3d at 327).
 
 
 43
 Wentner contends that Ridgewood's statements such as "... we'll always have something good for you to sell" and "[you can] make a lot of money" reflect assurances of continued employment. On the contrary, such statements contain oblique language insufficient to demonstrate the existence of an implied agreement. "'[O]blique language will not, standing alone, be sufficient to establish agreement'; instead, totality of the circumstances determines the nature of the contract." Id. at 681 (quoting Pugh, 116 Cal. App. 3d at 329).
 
 
 44
 Ridgewood employed Wentner as a wholesaler for sixteen months, during which time he won three $1,000 sales awards. Ridgewood maintains no written termination policies for this position. From 1988 to June 1, 1990, Ridgewood discharged eight of the fourteen wholesalers hired during that time. Wentner presented no evidence that Ridgewood's normal termination practices create an inference of an implied-in-fact agreement, other than his testimony that wholesalers typically remain in a job for "around five years" because it takes time to develop a customer base. Such facts are insufficient to create a genuine issue of material fact regarding whether Ridgewood and Wentner had an implied-in-fact agreement of continued employment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (existence of mere scintilla of evidence in support of nonmoving party's position is insufficient to withstand summary judgment).
 
 
 45
 A review of the facts presented in cases which found an implied-in-fact agreement illustrates the insufficiency of Wentner's evidence. See e.g., Foley, 47 Cal.3d at 681 (plaintiff received repeated oral assurances of job security, consistent promotions, salary increases, and bonuses over six years and nine months of employment); Pugh, 116 Cal. App. 3d at 316-18 (company had practice of not terminating administrative personnel absent good cause, plaintiff received numerous promotions to significant positions, and plaintiff received no formal criticism over 32 years of employment); Thomka v. Fin. Corp., 15 Cal. App. 4th 877, 885 (1993) (company had custom and practice of treating all account executives as permanent "non-probationary" employees, and employer added "at-will" language to sales regulations without notifying employees); Morishige v. Spencecliff Corp., 720 F. Supp. 829, 835 n.10 (D. Haw. 1989) (employee "guidebook" explicitly stated that employees would be discharged for cause); Forman v. BRI Corp., 532 F. Supp. 49, 50-51 (E.D. Pa. 1982) (plaintiff informed of employer's five-year growth plan and moved, at employer's expense, to different city to begin employment).
 
 C. Fraud in Employment Promises
 
 46
 To sustain his claim for fraud in employment promises, Wentner had to present evidence sufficient to create an inference that Ridgewood promised him continuing employment, absent good cause for discharge. See Bondi v. Jewels by Edwar, Ltd., 267 Cal. App. 2d 672, 677 (1968) (essential element of false promise claim is that defendant made a promise regarding a material fact). The evidence is insufficient to support Wentner's fraud claim for the same reasons it was insufficient to support his claim for breach of implied-in-fact employment contract.
 
 D. Defamation
 
 47
 Wentner's defamation claim is based on Ridgewood's communications to Wentner when he was terminated,[7] and to Capital Concepts, Wentner's subsequent employer. Whether a "reasonable fact finder could conclude that the published statements imply a provably false factual assertion" is a question of law. Moyer v. Amador Valley Joint Union High School Dist., 225 Cal. App. 3d 720, 724 (1990). A subjective opinion will not support a judgment for defamation because it does not imply a provably false factual assertion. Id. at 725.
 
 
 48
 Statements that Wentner could not "get the job done" and that his wholesaling was not "proceeding in a manner that was satisfactory" constitute Ridgewood management's subjective opinions. Similarly, Swanson's statement that "production wasn't exactly what he had hoped for" is a subjective expression of disappointment regarding Wentner's job performance. Accordingly, we conclude that as a matter of law Ridgewood's communications to Wentner did not contain provably false factual assertions. Recent California case law is in accord with this conclusion. See e.g., Moyer, 225 Cal. App. 3d at 725 (statement that plaintiff "is the worst teacher at FHS" is an expression of speaker's subjective judgment containing no verifiable facts); Botos v. Los Angeles County Bar Ass'n., 151 Cal. App. 3d 1083, 1088-90 (1984) (rating judge "not qualified" is local bar association's collective judgment of his qualifications, not an actionable statement of fact).
 
 
 49
 Wentner asserts that Ridgewood's attorney, Bob Gold, referred to him as a "poor wholesaler" in telephone conversations with William Dixon, the vice-president, and John Dixon, a registered representative, of Capital Concepts. William and John Dixon testified during their depositions that they could not remember any specifics regarding their conversations with Gold. Wentner's deposition testimony contained only vague recollections of what William Dixon relayed to him concerning Gold's statements.[8] Absent any corroboration in the record, we find Wentner's testimony insufficient to create a genuine issue regarding whether Ridgewood referred to him as a poor wholesaler. See Federal Deposit Ins. Corp. v. New Hampshire Ins. Co., 953 F.2d 478, 485 (9th Cir. 1991) (plaintiff must "set forth specific facts showing that there is a genuine issue for trial" to withstand summary judgment) (quoting Fed. R. Civ. P. 56(e)).
 
 
 50
 Because we conclude that Wentner has failed to present evidence sufficient to support a reasonable inference that certain statements were made, or that other statements contained provably false factual assertions, Ridgewood is entitled to summary judgment on Wentner's defamation claim.
 
 
 51
 E. Intentional Infliction of Emotional Distress
 
 
 52
 Wentner claims that Ridgewood's communications to Capital Concepts and to himself caused him severe emotional distress. Ridgewood contends that Wentner's claim for intentional infliction of emotional distress is barred because such communications are subject to the litigation privilege. Lerette v. Dean Witter Organization, Inc., 60 Cal. App. 3d 573, 576 (1976) (California Civil Code Sec. 47(2), confers absolute privilege upon communications related to litigation).
 
 
 53
 For communications to be absolutely privileged they must be "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Silberg v. Anderson, 786 P.2d 365, 368 (Cal. 1990) (citations omitted).
 
 
 54
 We conclude that Ridgewood's communications to Wentner are privileged as statements related to the present litigation. The statement "we'll destroy you," within the context of a settlement discussion, is protected under the litigation privilege as an attempt to achieve the objects of the litigation. See id. at 214 (litigation privilege "promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests.").
 
 
 55
 Ridgewood threatened litigation against Wentner and Capital Concepts concerning Wentner's allegedly defamatory statements to brokers at Capital Concepts. The "privilege relating to statements regarding prospective litigation is qualified rather than absolute; the prospective litigation must be contemplated in good faith and under serious consideration." Laffer v. Levinson, 34 Cal. App. 4th 117, 124 (1995). We conclude that Ridgewood's communications to Capital Concepts are privileged as statements related to prospective litigation.
 
 
 56
 Wentner's assertion that Ridgewood's threatened litigation was not contemplated seriously and in good faith is without merit. Wentner has not identified any facts in the record which support this contention. In fact, Wentner testified during his deposition that he had told brokers at Capital Concepts that Ridgewood was misleading the public in its offering materials. Accordingly, we conclude that the prospective litigation was contemplated in good faith. Cf. Herzog v. "A" Co., 138 Cal. App. 3d 656, 660-61 (1982) (defendant's letter to plaintiff threatening litigation if he accepted employment with competitor not privileged because litigation not contemplated in good faith where such employment would not violate non-competition agreement).
 
 
 57
 Finally, Ridgewood's threats to sue Capital Concepts are privileged as attempts to achieve the objects of prospective litigation. See Lerette, 60 Cal. App. 3d at 579 (demand letter sent to plaintiff's new employer accusing plaintiff of intentional misrepresentation of certain facts and threatening to sue plaintiff and his employer privileged).
 
 
 58
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Wentner submitted a proposed second amended complaint in response to Ridgewood's motion to dismiss the first amended complaint. In its December 10, 1991 order, the district court granted Wentner's "motion for leave to file his second amended complaint." The court then considered Ridgewood's motion to dismiss the first amended complaint moot, and proceeded to dismiss the claims as stated in the proposed second amended complaint
 
 
 [2]
 Specifically, the complaint alleges violations of the Securities Exchange Act of 1934 Sec. 10(b), 15 U.S.C. Sec. 78j(b) (1988), the Securities Act of 1933 Sec. 12(2), 15 U.S.C. 771 (1988), and the Cal. Corp. Code Secs. 25400(d), 25401, and 25504.1 (West 1977 & Supp. 1995). The state law claims incorporate by reference the allegations for the federal law claims. Wentner does not contend on appeal that the state claims should be subject to an analysis separate from the federal claims. Accordingly, our reference in this section to Wentner's "securities" claims incorporates the federal and state law securities claims
 
 
 [3]
 The district court considered Wentner's complaint deficient in several respects other than the failure to plead fraud with particularity. However, because we conclude that the complaint does not meet the requirements of Rule 9(b), we need not discuss the other grounds for dismissal relied upon by the district court
 
 
 [4]
 Fed. R. Civ. P. 9(b) provides:
 In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.
 
 
 [5]
 In addition, the complaint states:
 Defendants Ridgewood and Swanson knew or should have known that the decline curve for its prior similar investments in the Gulf of Mexico had averaged 30-50% per year, and that the results of prior Programs did not support the 9 to 10 year projected cash flow, and therefore that the projections and other material information given to plaintiff in connection with the 1989-II Program were false and misleading and made without reasonable basis.
 The financial projections in the Program Summary indicate that the expected return for a $70,000 investment is $208,775, or a payout of 298.25%. Defendants Ridgewood and Swanson knew or should have known that as of January 1, 1989, 19 other operating partnerships of defendant Ridgewood, operated by Hall-Houston in the Gulf of Mexico, and which were similar to the 1989-II Program, did not support the return projections, and therefore that the projections and other material information given to plaintiff in connection with the 1989-II Program were false and misleading and made without reasonable basis.
 Defendant Hall-Houston and defendants Ridgewood and Swanson knew or should have known that the prior similar partnerships had produced on average 3.5 to 9.5 BCF per prospect and did not support the estimated reserves[.]
 
 
 [6]
 For purposes of this section, "Ridgewood" refers only to Ridgewood Energy Corporation and Robert Swanson
 
 
 [7]
 We assume without deciding that these statements meet the publication requirement of a defamation claim because it was foreseeable to Ridgewood that Wentner would "repeat these slanders to third parties;" i.e., when interviewing for future jobs. McKinney v. County of Santa Clara, 110 Cal. App. 3d 787, 796 (1980)
 
 
 [8]
 We recognize that Wentner's testimony concerning Gold's statements to Dixon is inadmissible because it fails to satisfy the personal knowledge requirement of Rule 56(e) of the Federal Rules of Civil Procedure. It is also double hearsay. Because Ridgewood failed to object in the district court, however, it is a part of the record we must consider. Federal Deposit Ins. Corp. v. New Hampshire Ins. Co., 953 F.2d 478, 484-85 (9th Cir. 1992)