The majority's decision, which permits the continued prosecution of this action, is wrong. It is wrong, based, at least, on these reasons:
 (1) The television commercial that is the subject matter of this action was a form of core political speech that enjoys the highest, most protected position of any speech, and the majority has failed to grant it First Amendment protection, as required by the principles of law announced in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); and
 (2) There are no fact questions for a jury to decide, because the plaintiff has failed to offer clear and convincing evidence that the defendant acted with actual malice; therefore, the summary judgment was appropriate, and indeed, was required under the principles of law announced in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Because the Court fails to apply the principles of First Amendment law that are uniquely applicable to this case, I must respectfully dissent.
The issue presented here — whether allegedly false and defamatory speech about a public official or political candidate is protected speech — is not a new one. It was decided 28 years ago, when the Supreme Court of the United States, in the landmark case of New York Times Co. v. Sullivan,376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), established a new rule to be applied in such cases. New York Times was decided by a unanimous Court, the only disagreement being whether core political speech should be accorded a qualified privilege or an absolute privilege.[3]
The New York Times case was decided, as the Supreme Court expressed it, "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may wellinclude vehement, caustic, and sometimes unpleasantly sharpattacks upon government and public officials." *Page 931 376 U.S. at 270, 84 S.Ct. at 721 (emphasis added). Considering the Supreme Court's review in New York Times of the history of the First Amendment, it is clear to me that the Court came ever so close to holding that political speech, even speech that is false and defamatory, as it was in that case, has absoluteprotection under the First Amendment. I recognize, of course, that the Court did not hold that political speech is absolutely privileged, but the Court did severely narrow the scope of the traditional categorical exception that had applied when defamatory speech was involved. The narrowness of this defamation exception was just recently commented upon by the current Supreme Court in a case involving the constitutionality of a so-called "hate crime" statute. R.A.V. v. City of St.Paul, Minnesota, ___ U.S. ___, 112 S.Ct. 2538, 120 L.Ed.2d 305
(1992).[4]
The broad scope of the protection offered for political speech by New York Times and the narrowness of the defamation exception is shown by the following quote from that opinion:
 "In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy."
376 U.S. 254, at 271, 84 S.Ct. 710, at 721, quoting fromCantwell v. Connecticut, 310 U.S. 296, 310, 60 S.Ct. 900, 906,84 L.Ed. 1213 (1940) (emphasis added).
New York Times involved the publication of a newspaper advertisement that contained false statements about the police commissioner of Montgomery, Alabama. The purpose of the advertisement was to raise money, but the Supreme Court found that the advertisement was core political speech that was the very heart of the First Amendment. Political speech is still protected today and occupies the top position in the hierarchy of protected speech.[5]
Political speech involving public officials, especially thatmade during political campaigns, seems to be especially protected. To emphasize the First Amendment protection afforded core political speech, and the toughness required of those whose reputations or feelings may be affected by it, the Supreme Court, in New York Times, used as an example speech that was critical of a judge. The Court, citing and quoting from one of its prior cases involving criticism of a judge, said that "[i]f judges are to be treated as 'men of fortitude, able to thrive in a hardy climate,' Craig v. Harney, supra, 331 U.S. [367] at 376, 67 S.Ct. [1249], at 1255, 91 L.Ed. 1546
[1947], surely the same must be true of other government officials such as elected city commissioners." 376 U.S. at 273,84 S.Ct. at 722. As a footnote to this statement in its opinion, the Court noted that political speech and politicians have always operated in a different environment, and strongly suggested that political speech in political campaigns *Page 932 
is different in nature from other forms of speech:
 "The climate in which public officials operate, especially during a political campaign, has been described by one commentator in the following terms: 'Charges of gross incompetence, disregard of the public interest, communist sympathies, and the like usually have filled the air: and hints of bribery, embezzlement, and other criminal conduct are not infrequent.' Noel, Defamation of Public Officers and Candidates, 49 Col. L.Rev. 875 (1949).
 "For a similar description written 60 years earlier, see Chase, Criticism of Public Officers and Candidates for Office, 23 Am.L.Rev. 346 (1889)."
376 U.S. at 274, 84 S.Ct. at 722.
Based on the foregoing, I can only conclude that the majority has ignored the teachings of New York Times that public officials and political candidates, especially in political campaigns, should be "men [and women] of fortitude" and should not expect to be protected from the "hardy climate" of the public arena.
I must also disagree with other aspects of the majority opinion. The majority states "Taking the television commercial in its entirety, this Court holds that the television commercial was reasonably capable of a defamatory meaning." To make this finding, the Court must engage in a laboratory analysis of the commercial and decide that the words "as a reward" are defamatory. In my opinion, the parties in their briefs, and the Court, at oral argument, spent too much time trying to analyze what these three words meant. The fact that so much analysis and discussion revolved around the meaning of the commercial should be proof positive that the plaintiff has failed to offer proof, with "convincing clarity," that the commercial was so defamatory that it could receive no First Amendment protection. Why should core political speech suffer such close scrutiny as the Court has given this commercial? Does the commercial lose its First Amendment protection if it is not completely true and if it hints of misconduct on the part of the plaintiff? I think not. I do not believe that political speech must suffer such close scrutiny on our part, or on the speaker's part. On the contrary, as the Supreme Court said in footnote 14 of New York Times, the climate in which public officials operate, especially during a politicalcampaign, is a "hardy climate." " 'Charges of gross incompetence, disregard of the public interest, communist sympathies, and the like usually have filled the air; and hints of bribery, embezzlement, and other criminal conduct are not infrequent,' " notes the court. 376 U.S. at 273,84 S.Ct. at 722.
This type of robust speech and negative campaigning is not just of recent origin. Indeed, courts have recognized that speech made about politicians has been extraordinarily harsh throughout our nation's history:
 "Our political history reeks of unfair, intemperate, scurrilous and irresponsible charges against those in or seeking public office. Washington was called a murderer, Jefferson . . . insane . . ., Henry Clay a pimp, Andrew Jackson an adulterer, and Andrew Johnson and Ulysses Grant drunkards. Lincoln was called a half-witted usurper, a baboon, a gorilla, a ghoul. . . . Franklin Delano Roosevelt was castigated as a traitor to his country. Dwight D. Eisenhower was charged with being a conscious agent of the Communist conspiracy. [Harsh criticism of politicians is] an unpleasant fact of our political background — a history of rough, crude, brawling, mud-slinging, muck-raking, name-calling attacks on those in or seeking political office."
Desert Sun Pub. Co. v. Superior Court, 97 Cal.App.3d 49,158 Cal.Rptr. 519, 521 (1979). See also Clark v. Allen, 415 Pa. 484, 204 A.2d 42, 44 (1964).
Even assuming that the plaintiff has shown that the television commercial contained a false statement and that it was defamatory, that does not entitle the plaintiff to a trial on the issues. "Authoritative interpretations of the First Amendment guarantees have consistently refused to recognize an exception for any test of *Page 933 
truth — whether administered by judges, juries, or administrative officials — and especially one that puts the burden of proving truth on the speaker." New York Times v.Sullivan, 376 U.S. at 271, 84 S.Ct. at 721. In that case, the Court also said that "erroneous statement is inevitable in free debate, and that it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need * * * to survive." 376 U.S. at 271-272, 84 S.Ct. at 721. "The constitutional protection does not turn upon 'the truth, popularity, or social utility of the ideas and beliefs which are offered." 376 U.S. at 271, 84 S.Ct. at 721.
There is another reason why I think that the trial judge properly entered the summary judgment in this case. The substance of the television commercial was not materially different from that of a newspaper account of the same facts. In fact, the record in this case shows that the defendant created the campaign commercial based, in part, upon information contained in two published articles, one describing the plaintiff as "an Alabama political operative" who had received over $700,000 in consulting fees, and the other an Associated Press story that ran in The Montgomery Advertiser, that read, in part, as follows:
 "Billy Joe Camp, former president of the Alabama Public Service Commission and a Democratic candidate for secretary of state, received more than $770,000 in consulting fees from Georgia Power Co. during a three year period, an Atlanta based newsletter reported Monday.
". . . .
 "As head of the Alabama PSC, Camp helped regulate Alabama Power Co. which — like Georgia Power — is a subsidiary of the Southern Co."
The Associated Press and the editors of The MontgomeryAdvertiser considered the receipt by Mr. Camp of over $770,000 from Georgia Power Company, the sister company of Alabama Power Company, a company that he had formerly regulated, to be newsworthy and of public interest. When I compare the news accounts with the television commercial, the implications and innuendos are basically the same — a former public service commissioner has received $770,000 from a sister company of a company he regulated when he was president of the PSC. But even assuming that the implications and innuendos of the television commercial and the news stories are different, does that mean that the television commercial is not the sort of "robust speech" that the Constitution of the United States protects in cases such as this where two political candidates are engaged in the "hardy climate" of a hotly contested political race? I believe that the television commercial was just the kind of protected political speech that the Supreme Court of the United States found to be protected in New York Times.
Also, I disagree with the majority because I think that the plaintiff has failed to sustain his burden of offering "clear and convincing" evidence that the defendant was guilty of "actual malice." The plaintiff presented no evidence from which a "reasonable factfinder could conclude . . . that [he] ha[s] shown actual malice with convincing clarity." Anderson v.Liberty Lobby, Inc., 477 U.S. at 252, 106 S.Ct. at 2512. As I have already stated, if lawyers and judges have to spend as much time as we have spent trying to decide whether the commercial is true or false, then the burden of proving that it was defamatory with "convincing clarity" has clearly not been met. Let me make another point: Implicit in the majority's holding is a conclusion that the Anderson case involves federal procedural law and that this Court is not bound by it. Anderson
involved federal constitutional law that is applicable to Alabama, and it must be remembered that, in New York Times, there was a trial, there was a jury verdict for the plaintiff, and the Supreme Court said: "Applying these standards, we consider that the proof presented to show actual malice lacks the convincing clarity which the constitutional standard demands, and hence that it would not constitutionally sustain the judgment for respondent under the proper rule of law."376 U.S. at 286, 84 S.Ct. at 729.
When constitutional principles such as freedom of speech is involved, I do not *Page 934 
believe that Alabama procedural rules, if they result in a continuing violation of a defendant's constitutional rights, would be sanctioned.
As the Supreme Court noted in New York Times, political speech, especially during a political campaign, can become quite "robust," but it is protected speech. Political speech in the "hardy climate" of public affairs is the very type of speech the framers of the First Amendment were most anxious to protect. While I realize that there is a narrow category of defamatory speech that the Constitution of the United States does not protect, I fail to see how the television commercial here fits in that category.
The opinion today will have a "chilling effect" upon the right of political candidates, and others, to freely comment and express opinions on candidates and great public issues for fear of being haled into court and charged with defamation. That is regrettable.
I would affirm the judgment of the trial court, even though it is a summary judgment, because I believe the plaintiff has failed to show that he can prove by clear and convincing evidence that the defendant's speech was not protected by the First Amendment. I firmly believe that the holdings in New YorkTimes and Anderson v. Liberty Lobby, Inc., compel such a result.
[3] Justice Hugo Black was of the opinion that the First Amendment granted an absolute privilege. 376 U.S. at 293, 84 S.Ct. at 733
(Black, J., with whom Douglas, J., joined, concurring specially).
[4] In R.A.V. v. City of St. Paul, the majority stated: "Our decisions since the 1960's have narrowed the scope of the traditional categorical exceptions for defamation, see New YorkTimes Co. v. Sullivan, 376 U.S. 254, [84 S.Ct. 710,11 L.Ed.2d 686] (1964); Gertz v. Robert Welch, Inc. 418 U.S. 323
[94 S.Ct. 2997, 41 L.Ed.2d 789] (1974); see generally Milkovich v. LorainJournal Co., 497 U.S. 1, 13-17 [110 S.Ct. 2695, ___ _ ___,111 L.Ed.2d 1] (1990)."
[5] In R.A.V. v. City of St. Paul, Justice Stevens, in a special concurrence, stated that "speech about public officials or matters of public concern receives greater protection than speech about other topics." ___ U.S. at ___, 112 S.Ct. at 2563
(Stevens, J., concurring in the judgment, by separate opinion, in which White, J., and Blackmun, J., concurred). Justice Stevens further stated that "[o]ur First Amendment decisions have created a rough hierarchy in the constitutional protection of speech. Core political speech occupies the highest, most protected position; commercial speech and obscene, sexually explicit speech are regarded as a sort of second-class expression; obscenity and fighting words receive the least protection of all."